## DANA BROWN and Another v. A. K. HALL.[1]

February 28, 1913.

Nos. 17,905—(49).

**Performance of contract — question for jury.**
> Action of the trial court in submitting to the jury the question of substantial performance of a contract to remove "deadhead" logs from the Mississippi river, sustained.

[1] Reported in 140 N. W. 128.

Action in the district court for Morrison county to recover $323.48 upon a written contract made a part of the complaint. The answer admitted the execution of the contract but alleged that plaintiffs abandoned and failed to perform it; it further alleged that by the failure to perform the contract defendant had suffered a loss. of $500, for which he demanded judgment. The case was tried. before Taylor, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict of $237.06 in favor of plaintiffs. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*E. A. Kling,* for appellant.

*A. H. Burnham,* for respondents.


PHILIP E. BROWN, J.

Action to recover the balance claimed to be due on a contract for removing sunken logs from the waters of the Mississippi. The plaintiffs had a verdict, and the defendant appealed from an order denying his motion for judgment notwithstanding or for a new trial.

The following facts were conclusively established: Prior to August 20, 1910, the defendant orally contracted with the Mississippi & Rum River Boom Company to remove during the season of 1910 water-soaked logs, known as "deadheads," from specified portions of the Mississippi river, for which services he was to receive compensation from the company. Thereafter, and on the date stated, he sublet to the plaintiffs a part of the work he had so undertaken to do, such subletting being evidenced by the following contract then executed by the parties:

"This agreement entered into between A. K. Hall, and Dana Brown and W. T. Tourtillotte, in which we the last two named agree to haul or take from the Mississippi river all deadhead logs in said river on both sides from the south line of Lyman Ayer's land to the north line of the same, and to place same logs on the banks of the river in accordance with the requirements of a certain contract between said A. K. Hall and Mississippi & Rum River Boom Co. and said A. K. Hall hereby agrees to pay 15c (fifteen cents) for each

deadhead, ⅔ of this price at each inspection and the remaining ⅓ at completion of contract."

Pursuant thereto the plaintiffs commenced the work, subletting portions thereof to two separate persons, one of whom was named Estabrook, and altogether 4263 logs were removed, for which the defendant paid plaintiffs ten cents per log, refusing, however, to pay the remaining five cents per log called for by the contract upon its completion. Subsequently Estabrook removed 451 logs, for which the defendant has made no final settlement with the plaintiffs, and which the plaintiffs claim were taken out by Estabrook under his subcontract with them.

The plaintiffs on the trial rested their claim for recovery upon the theory that the removal of the logs last mentioned, together with the removal of those first mentioned, and the evidence of other matters received, established a substantial performance of the contract, and the jury so found. The defendant thereupon insisted, and now argues, that the contract was an entire one, and that even if the plaintiffs' claim as to the Estabrook logs was well founded, which he denies, the evidence conclusively established that there was no compliance with the contract, substantial or otherwise. The defendant also urges that the phrase in the contract above quoted, "in accordance with the requirements of a certain contract between said A. K. Hall and Mississippi & Rum River Boom Co.," related to the manner of placing the removed logs on the river banks, and otherwise had nothing to do with the terms of the contract between the plaintiffs and the defendant.

At the conclusion of the testimony the defendant moved for an instructed verdict on the ground of insufficient performance of the contract, as stated, which motion the court denied, and charged that, if the jury found a substantial performance of the contract as it was understood between the parties thereto, the plaintiffs should recover, and otherwise not. No exception was taken to this charge on the trial, but on the motion for a new trial the defendant assigned error, which he likewise assigns and urges in this court, to the action of the trial court in submitting the question of substantial performance.

It appeared that the stretch of river included in the plaintiffs' contract was from one-half to three-quarters of a mile long and about thirty rods wide, and in places the river was deep; also, that logs had been lying in this part of the river for a number of years, and were constantly being brought in and carried out by the action of the water.

1. The question of whether Estabrook's services were performed for the plaintiffs or for the defendant was clearly one for the jury, and the defendant does not directly contend otherwise.

2. An assignment of error is made to the court's instructions with reference to the terms of the contract, and others are made to rulings upon the admissibility of evidence. We have considered these assignments, and find neither error nor occasion for discussion.

3. We come now to the main question involved, namely: Did the court err in refusing to instruct the jury to find for the defendant on the ground of insufficient performance of the contract? We are of the opinion that under the provisions of the contract there must be read into it the terms and conditions of the defendant's contract with the boom company, for it is evident that the defendant's intention was merely to have the plaintiffs perform for him his contract with the boom company within the portion of river specified. Otherwise the contract would be incomplete as providing no time for its performance. See Moore v. County of Ramsey, 104 Minn. 30, 115 N. W. 750; 1 Dunnell, Minn. Dig. § 1831.

The defendant's construction of the contract is to the effect that as a matter of law the plaintiffs undertook to remove all the "deadhead" logs in the portion of the river allotted to them; but under the peculiar surrounding circumstances of this transaction, which must be taken into account in determining what the parties intended by the language used, we cannot so hold. Did the parties intend the removal of those logs only which were in the river in the plaintiffs' territory at the time of the making of the contract, or did they also contemplate the removal of those thereafter floating in? As stated, the evidence shows that submerged logs were constantly coming in and moving out. The defendant's theory involves the extension of the subcontract beyond the term of his contract with the boom company,

an assumption difficult of acceptance. There is evidence, practically conclusive, that the boom company accepted the plaintiffs' performance of their subcontract as constituting a satisfactory performance of the defendant's contract with it in so far as concerned the territory covered by the subcontract, and there is also evidence that the defendant considered the subcontract performed in the main. Moreover, there is a sharp conflict in the testimony regarding what proportion of the logs was removed, and this turns largely upon the question of the southerly boundary of the territory included within the subcontract. Both of these questions were for the jury.

We regard the doctrine of substantial performance as propounded by the decisions of this court as both salutary and equitable, and we have no disposition to place any further restrictions upon its application. The question of performance is ordinarily for the jury, and we are convinced that the court was right in permitting the jury to determine whether the plaintiffs "substantially performed the contract as it was understood between [the plaintiffs] and the defendant."

Order affirmed.