JOHN H. McCLURE, DOING BUSINESS AS THE McCLURE CONTRACTING COMPANY v. VILLAGE OF BROWNS VALLEY.[1]

July 25, 1919.

No. 21,327.

**Evidence of value by owner.**

    I. The president of a village council, having no special or intimate knowledge of the nature or quality of the materials entering into the construction of a bridge owned by the village, does not come within the rule that the owner of property may testify to its value.

**Appeal and error — refusal to give requested instruction.**

    2. Error cannot be predicated upon the court's refusal to give a requested instruction containing a correct abstract statement of law which is not applicable to any of the issues in the case.

**Bridge — recovery of price — statute.**

    3. Section 2600, G. S. 1913, relating to the strength of public bridges, does not prevent a bridge builder from recovering the contract price of a bridge which has not been submitted to the test referred to in the statute, but which has supported a weight four times as great as that

[1]Reported in 173 N. W. 672.

required by the specifications and three times as great as that required by the statute.

Contract — question of substantial performance for the jury.

4. The evidence required the court to submit to the jury the question whether there had been a substantial performance of the contract to build the bridge, under the rule that ordinarily the question of substantial performance is one for the jury, and justified the jury in finding that there had been such performance.

Action in the district court for Traverse county to recover $3,040, the contract price of a certain bridge. The case was tried before Flaherty, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $2,653 and interest. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*D. J. Leary, Charles E. Houston* and *James B. Ormond,* for appellant.

*Murphy & Anderson,* for respondent.

LEES, C.

This action was brought to recover the contract price of a bridge. Plaintiff had a verdict. A new trial was denied and defendant appeals.

On June 25, 1915, the parties to this action executed a contract whereby plaintiff undertook to construct a concrete bridge over the Minnesota river, in accordance with plans and specifications which defendant had procured, and which, by reference, were made part of the contract. He also undertook to provide a temporary bridge over the river while the new bridge was under construction, and to remove an old bridge which the new one replaced. Defendant agreed to pay him therefor $2,748 and the cost of the temporary bridge, plus 10 per cent, such cost not to exceed $150.

The complaint alleged performance of the contract on plaintiff's part and a refusal by defendant to pay him anything. It also alleged that the actual cost of the temporary bridge was $146 and that extra labor and materials were furnished during the progress of the work of the value of $146. Judgment for $3,040 and interest was demanded.

The answer denied performance of the contract; alleged that a bridge was built, but not such a bridge as the contract called for, in that it

was defectively constructed and was unsafe for ordinary traffic; admitted that a temporary bridge was built by plaintiff, but denied that it cost more than $25, and denied the furnishing of any extra labor or materials. It also pleaded, as a counterclaim, carelessness on plaintiff's part in taking down the old bridge and his conversion of part of it to defendant's damage in the sum of $500. There were other counterclaims, but they were eliminated from the case and need not be referred to. The verdict was for $2,653, with interest from the date of the completion of the bridge. We take up the questions raised in the order in which they were presented in the argument.

1. The president of the village council was called as a witness for defendant and over objection testified that the value of the old bridge when plaintiff removed it was $500. Later on this testimony was stricken out on plaintiff's motion, on the theory that the witness had no qualifications which made him competent to testify to the value of the old bridge. There was no error in this. The witness was an attorney at law, without special knowledge of the value of the materials entering into the construction of bridges. The rule that the owner of property may testify to its value has no application. The bridge was owned by the village. Its president represented it, but was not shown to have any more intimate knowledge of the nature and quality of the materials in the bridge than any other inhabitant of the village. Such intimate knowledge furnished the only basis for the rule. Derby v. Gallup, 5 Minn. 85 (119); Crich v. Williamsburg City Fire Ins. Co. 45 Minn. 441, 48 N. W. 198.

2. The court was requested to instruct the jury that persons dealing with a municipality are chargeable with notice of its powers and the powers of its officers. The instruction was not given and error is assigned on that score. As an abstract statement of the law there was no fault in the requested instruction, but it had no application to the issues in the case and hence the court was not required to give it. The village had power to make the contract with plaintiff and its officers had power to execute it in its behalf. There is no question in the case of the usurpation of power on the part of the village officials, and no claim that the legitimate powers of the village were transcended.

3. Section 2600, G. S. 1913, reads as follows:

"All bridges hereafter constructed on any public street or highway in

any county, township, town or village, in the state of Minnesota, shall be of sufficient strength to support, with perfect safety, any wagon, engine or other vehicle with a weight of twenty tons on two axles with ten foot centers, with not to exceed three-fourths of said weight concentrated on one axle, when driven at a speed of not to exceed three miles an hour; nothing herein contained shall apply to any automobile."

The court was asked to instruct the jury that "plaintiff * * * was charged with notice of what the law (section 2600) required with reference to the bridge in question." This instruction was not given. In denying the motion for a new trial, the court held that the statute did not forbid the making of a bridge contract which failed to provide for a test of the strength of the bridge as directed by the statute, or the maintenance of an action on such a contract for the recovery of the contract price. We find it unnecessary to consider whether this is a correct interpretation of the statute, for it conclusively appears that the bridge was so constructed that it supported a weight of over 60 tons. Its strength was four times as great as that required by the specifications and three times as great as that required by the statute, hence defendant was in no position to contend that the statute had not been complied with and no possible prejudice could result from the court's refusal to give the requested instruction.

4. The weight of the argument is directed to the sufficiency of the evidence to sustain the verdict. It appears that the bridge sags perceptibly. When the concrete was poured in the forms for the girders, they settled two or three inches, and jackscrews were used in an attempt to bring them back to a level. There is an excessive camber or upward curve in one of the girders. There are numerous cracks and holes in the concrete and the reinforcing rods are exposed in places. The concrete is not of the same color and the bridge presents a rough appearance displeasing to the eye.

It appears, however, that it has been in constant use since it was completed in September, 1915. Its strength has been tested by running three steam tractor engines upon it at the same time. Their combined weight with that of the water and coal carried was over 60 tons. The bridge stood the test. The specifications only required it to be strong enough to carry a 15-ton engine of the ordinary type used by threshers.

The bridge was not constructed in strict accordance with the plans

and specifications. Few concrete bridges are. The court submitted the case to the jury on the theory that plaintiff might recover if he had substantially performed his contract. If he had so performed, the jury were told to make an allowance out of the contract price to cover the cost of remedying defects and omissions. The law was laid down in accordance with the principles stated in Leeds v. Little, 42 Minn. 414, 44 N. W. 309, to which this court has repeatedly given its approval. Anderson v. Pringle, 79 Minn. 433, 82 N. W. 682; Blakely v. J. Neils Lumber Co. 121 Minn. 280, 141 N. W. 179; Snider v. Peters Home Bldg. Co. 139 Minn. 413, 167 N. W. 108. Ordinarily the question whether plaintiff has substantially performed a building contract upon which he sues is a question for the jury. Brown v. Hall, 121 Minn. 61, 140 N. W. 128; Snider v. Peters Home Bldg. Co. supra. The instructions to the jury were clear and comprehensive and no exception was taken to them. The jury gave plaintiff $387 less than he claimed. In denying the motion for a new trial, the learned district judge said:

"The case was fairly tried to a good, intelligent jury, who evidently found in favor of defendant on every question submitted to it, except that there was a substantial performance of the contract, and they must have made a very liberal allowance to defendant for imperfect work."

We have been impressed by a careful reading of the record, with the conviction that the bridge is safe enough for every kind of traffic it will have to sustain and that the chief complaint which the village may justly make rests on the unsightly appearance the bridge presents. It is evident that it bears the marks of poor workmanship and is not a municipal ornament, but neither the contract nor the specifications require it to conform to any given standard of appearance.

We find no error in the record, hence the order denying a new trial must be and hereby is affirmed.