TOWN OF FIFIELD, a municipal and political corporation of Price County, Wisconsin, Plaintiff-Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation; Elmer V. Halverson; and Gary V. Halverson, Defendants-Appellants.†

Court of Appeals

*No. 82–1444. Submitted on briefs March 21, 1983.— Decided August 16, 1983.*

† Petition to review granted.

For the appellants the cause was submitted on the briefs of *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.,* of Wausau.

For the respondent the cause was submitted on the brief of *DeBardeleben & Snyder* of Park Falls.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. The defendants appeal a judgment awarding the Town of Fifield $94,000 for the damages it sustained when Gary Halverson drove his forty-three-ton pulpwood truck onto a town bridge with a posted weight capacity of four tons. Halverson admitted liability for destroying the bridge, and the jury awarded the town $34,000 for its loss of the bridge and $13,000 for consequential damages. The trial court doubled these damages pursuant to sec. 86.14(2), Stats.[1] Because the $34,000 award is based on testimony that the court should not have admitted, we reverse the judgment and

---

[1] Section 86.14(2), Stats., provides:

Any person who subjects any bridge or culvert to a load in excess of maximum limitations on weight of vehicles on highways imposed by law or regulations thereunder or limitation as to gross weight of vehicles as posted on or at any such bridge or culvert shall be liable for double the amount of damages that may be caused thereby. There shall be no recovery for any injury to himself or to the property in his keeping.

remand this matter for a new trial on the issue of damages.

The town is entitled to recover the reasonable value of its bridge just before its destruction. *See Shell Oil Co. v. Jackson County*, 193 S.W.2d 268, 272 (Tex. Civ. App. 1945). The reasonable value of the bridge before its destruction is the present cost of a bridge of the same dimensions and carrying capacity, adjusted to reflect the depreciation of the destroyed bridge. *Id.* at 273.

The highest expert opinion of the value of the bridge based on this measure of damages was substantially less than $34,000. The jury therefore had to base its award at least in part on the opinion of the town chairman, who testified that the old bridge was worth $40,000.[2] Unfortunately, there was no foundation for this opinion, and the court should not have allowed the jury to consider it. *See Bituminous Casualty Corp. v. United Military Supply, Inc.*, 69 Wis. 2d 426, 435, 230 N.W.2d 764, 769 (1975). The opinion was based solely on the fact that the old bridge had one-fifth the carrying capacity of the new $200,000 bridge. Neither logic nor the record permit the assumption of any relationship between the value before destruction of a four-ton bridge and the cost of a new twenty-ton bridge.

It was also error to allow the town's witnesses to testify about the bridge's use and its importance to the town. There is no evidence that the bridge's use affected either its value or its depreciation. This testimony therefore was not relevant to the value of the bridge, *see* secs.

---

[2] It was error to permit the town chairman to give his opinion on the value of the bridge on the basis that he owned the bridge. *See McClure v. Village of Browns Valley*, 173 N.W. 672, 673 (Minn. 1919).

904.01 and 904.02, Stats., and it could only improperly influence the jury.

The town is entitled to recover its expenses for removing the debris and for providing a detour and a temporary bridge.[3] Section 86.14(2) provides that any person who subjects a bridge to a load in excess of posted limits "shall be liable for double the amount of damages that may be caused thereby." This language clearly authorizes the recovery of consequential damages. *See State ex rel. Department of Highways v. Ray I. Jones Service Co.*, 475 P.2d 139, 144 (Okla 1970). The cases cited by appellants, in which consequential damages were denied, applied statutes that limited recovery to the damages to the bridge or road itself. *See* cases collected at Annot., 53 A.L.R.3d 1035 (1973).

■

The collateral source rule bars any reduction of the town's award even though federal and county grants covered 87½% of the cost of the replacement bridge. The collateral source rule is applicable to property damage actions, *see W.G. Slugg Seed & Fertilizer, Inc. v. Paulsen Lumber, Inc.*, 62 Wis. 2d 220, 228, 214 N.W.2d 413, 417 (1974), and it applies to funds received from the government. *See Thoreson v. Milwaukee & Suburban Transport Corp.*, 56 Wis. 2d 231, 243, 201 N.W.2d 745, 752 (1972). The defendants' contention that they should not be punished by the collateral source rule as well as the double damages assessed pursuant to sec. 86.14(2) ignores the rationale of the rule. The rule merely allows the innocent party rather than the wrongdoer to benefit from the windfall.

---

[3] Because we are remanding for a new trial, we do not decide the question of whether the proof of consequential damages was sufficient.

The trial court properly refused to inform the jury of the statutory provision for double damages and of the effect of the collateral source rule. *See Anderson v. Seelow,* 224 Wis. 230, 233, 271 N.W. 844, 845 (1937). The jury's job was to find the reasonable value of the bridge and the consequential expenses incurred by the town. Knowledge of the law would not have helped the jury make these findings, and it might have improperly influenced the jury.

*By the Court.*—Judgment reversed and cause remanded.