TOWN OF FIFIELD, a municipal and political corporation of Price County, Wisconsin, Plaintiff-Respondent-Petitioner,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation, Elmer V. Halverson and Gary V. Halverson, Defendants-Appellants.†

Supreme Court

*No. 82–1444. Argued April 24, 1984.——Decided June 20, 1984.*

(Also reported in 349 N.W.2d 684.)

† Motion for reconsideration denied by published per curiam opinion filed August 29, 1984.

For the plaintiff-respondent-petitioner there was a brief (in court of appeals) by *DeBardeleben & Snyder,* Park Falls, and oral argument by *Daniel F. Snyder.*

For the defendants-appellants there were briefs (in court of appeals) by *Douglas J. Klingberg, Richard W. Zalewski* and *Terwilliger, Wakeen, Piehler, Conway &*

_Klingberg, S.C.,_ Wausau, and oral argument by _Douglas J. Klingberg._

HEFFERNAN, C.J.   This is a review of a court of appeals published decision[1] which reversed a damages judgment of the circuit court for Price county, David A. Clapp, Circuit Judge. We reverse the court of appeals and reinstate the jury verdict and the circuit court judgment.

The Town of Fifield owned and maintained a bridge within the town boundaries which crossed a stream that separated one portion of the town from the rest.

The bridge was built in about 1905. It served the needs of the town until shortly after midnight on November 13, 1977, when the bridge, with a rated load limit of four tons, was traversed, or almost traversed, by a truck with a load of 43 tons of pulpwood, and driven by an employee of Halverson Trucking. The bridge collapsed and is admittedly a total loss. There was, according to the record, a salvage value—scrap metal and planking—of about $100. The scrap value, as a factor in diminution of damages, has not been an issue in the case.

The town brought suit against the Halversons and their insurance company, State Farm Mutual Automobile Insurance Company, for damages for the total destruction of the bridge. Shortly before trial, liability was acknowledged; thus, only damages were at issue at trial. It was also acknowledged that, under sec. 86.14 (2), Stats., because the town had posted a four-ton load limit for the bridge which had been ignored by the driver of the truck, double damages were payable.

Trial was to a Price county jury on May 26 and 27, 1982. The jury returned a verdict awarding damages for the destruction of the bridge in the amount of

[1] _Town of Fifield v. State Farm Mutual Automobile Ins. Co.,_ 114 Wis. 2d 518, 339 N.W.2d 348 (Ct. App. 1983).

$34,000, and for the removal of wreckage and for the emergency expenses entailed in providing a detour and a temporary Bailey Bridge, damages in the sum of $13,000. Pursuant to sec. 86.14(2) the trial judge entered judgment in double the amount awarded by the jury, $94,000.[2]

The defendants, after having their post-trial motions denied, appealed to the court of appeals. That court reversed, stating that the award for damages to the bridge was erroneous because the jury was allowed to consider inadmissible evidence.

The court of appeals concluded that the testimony of the town chairman, which included an opinion that the value of the bridge just prior to the accident was $40,000, was evidence not grounded on an appropriate "foundation," because it was based on the assumption that, because the replacement bridge had a cost of $200,000 and a load capacity five times that of the old bridge, the value of the old bridge was one-fifth of the cost of the newly constructed one. It also held that the unique value and use of the bridge to the town was irrelevant. The court stated:

"The reasonable value of the bridge before its destruction is the present cost of a bridge of the same dimensions and carrying capacity, adjusted to reflect the depreciation of the destroyed bridge." 114 Wis. 2d 518, 520.

It concluded there was no expert testimony to support the jury verdict. The court of appeals also held that the

---

[2] Sec. 86.14(2), Stats., is as follows:

"(2) Any person who subjects any bridge or culvert to a load in excess of maximum limitations on weight of vehicles on highways imposed by law or regulations thereunder or limitation as to gross weight of vehicles as posted on or at any such bridge or culvert shall be liable for double the amount of damages that may be caused thereby. There shall be no recovery for any injury to himself or to the property in his keeping."

town chairman could not testify to the value as an owner, because the town, not the chairman, owned the bridge. It remanded the case for a new trial on the issue of damages only.

We conclude the court of appeals did not apply the appropriate rule of law for the determination of damages and held that some relevant evidence we consider proper was not admissible. We first recount the evidence in support of the jury verdict.

The bridge in question, the Central Avenue bridge, was a single lane steel-truss bridge erected in 1905 or 1906 with a wood plank decking. George Koshak, a general contractor and member of the Price County Board, three years before the accident inspected the bridge as a part of his duties as county supervisor and as a member of the highway committee. Although some of the planking needed rebolting or replacement with a steel runway, he testified that the bridge structure was in "good" condition.

Perhaps the most crucial testimony, testimony which the court of appeals found inadmissible, was that of Joseph Wagner, the chairman of the town of Fifield. He had held that position for seven years and had held the office of Price County Highway Commissioner for seven years prior thereto. His duties as county highway commissioner included a duty to inspect bridges throughout the county to determine whether they were properly maintained. He acknowledged that he did not have specialized training in bridge inspection, but he had been inspecting bridges in the area for fourteen years.

He testified that the bridge was the essential and only means of access to the rest of the town for several families, and, in addition, it was used for recreational purposes. He testified that he had inspected the bridge only three months prior to its collapse. He stated he examined the planking, supporting walls, steel members,

beams, and bolts in the superstructure and the substructure and found them all to be in good condition. He concluded that no work needed to be done on the bridge and testified that the town had no plans to replace the bridge. As a consequence of the total destruction of the old bridge, it was necessary, however, to have it replaced by a new bridge costing about $200,000.

At this point in the trial, town counsel asked:

"Now, based on your knowledge and experience, your observations of and inspection of this particular Central Avenue bridge prior to its destruction and the uses to which it was put by the Town of Fifield, do you have an opinion to a reasonable probability as to the value of the Central Avenue bridge to the Town of Fifield taking into account its uses and load limits to which it was subjected immediately prior to the bridge—to the bridge's destruction on November 13, 1977."

This question was objected to by counsel for the defendant, but overruled by the trial court. The judge stated:

"An owner can testify to the value of property insofar as he sees it. The witness is not an appraiser, but the argument no doubt will be made as to what weight should be given to that testimony, and no doubt that's a matter for the jury to decide accordingly."

It was after this interchange between counsel and the court that Joseph Wagner responded to the question of value and also tied his opinion of value to the cost of the new bridge.

Evidence was also admitted at this juncture of the trial in respect to the clean-up costs in the approximate amount of $13,000. These damages are not in issue on this review.[3]

---

[3] Sec. 809.62, Stats., provides that only issues raised in the petition for review (or cross petition) are before this court. Neither party, by petition for review, questioned the court of

The town also called Anthony Wilhelm, a registered professional engineer, with extensive experience as a bridge design engineer with the state highway commission and who was currently working primarily as a cost consultant and design engineer for municipalities wishing to construct bridges. He was the designer of the replacement bridge and inspected the ruins of the old bridge. He concluded that the old bridge had a useful life of at least an additional ten years and that, with continued maintenance, the bridge's use could have been extended beyond that time. Wilhelm stated this was true because of the steel-truss construction of the old bridge, which lent itself to repairs as they are needed by replacing deficient steel members with substitute welded steel pieces, and that the old bridge could have been strengthened and improved.

He also testified that the old bridge was a total loss and that the clean-up of the debris resulted in a cost to the city of an amount in excess of $13,000.

It was his opinion that the old bridge just prior to its collapse had a value of $24,000. He took into consideration the probable additional useful life of the old bridge, its condition, and the cost and capacity of the replacement bridge.

George E. Webster, a witness for the defendant, concluded that, based on 1977 costs, a bridge identical to the destroyed bridge could have been built for $57,000. In

appeals affirmance of the jury finding of $13,000 for clean-up. It should also be noted that the defendants' objection to the cost figures for the new bridge given at trial as about $200,000 are also not in dispute before the court. The trial court and the court of appeals, because of the collateral source rule, permitted admission into evidence the full cost of the bridge, even though it is clear that only a small portion of the $200,000 was the responsibility of the town. The bulk of the cost for the new bridge was assumed by the state and federal governments. There has been no challenge of this ruling on this review.

rebuttal, the town's witness, Wilhelm, stated that the correct 1977 cost for the bridge like the one built in 1906 would be about $103,000.

Only the question of damages for the total destruction of the bridge is at issue on this review. It is conceded that the old bridge had no market value, in the sense that no willing buyer or willing seller, even hypothetically, could be imagined. Additionally, it is clear from the record that the bridge was of some special value and use to its owner, the town of Fifield. The usual rule of damages—the value before the occurrence as compared to the value thereafter—is not applicable, because the value before is not readily ascertainable on the basis of market value. It is agreed that the value after was zero.

The defendant urges this court adopt as the measure of damages for the destroyed bridge the reasonable value of the bridge immediately before its destruction or the cost of constructing a new bridge similar to the old one, with a deduction in value for depreciation. It also asserts that the trial court erroneously allowed the "owner" evidence of Joseph Wagner, the town chairman, when he was not the owner. It also argues it was error to admit any evidence of the value of the bridge to the owner aside from replacement costs less depreciation.

The position of the town is simply that the value of the bridge is the value to the owner which is to be ascertained by all the factors placed before the jury, including opinion evidence, cost, use, cost of restoration, ease or likelihood of repair, continued usefulness, age of the property, and its condition.

We agree with the position asserted by the plaintiff town, thereby reversing the court of appeals, and we direct the reinstatement of the jury verdict and judgment of the circuit court.

There is agreement that the value of the bridge just prior to its destruction is the key fact to be determined

in this case. It is also apparent that this value cannot be determined with the certainty that surrounds the valuation of an item of property that has a market value. The position of the defendant is that the value of the bridge is to be measured just in terms of "bricks and mortar" or the counterpart thereof in a bridge. The position of the town is that value before, because there is no market value, is value to the owner, taking into consideration all relevant factors.

Some of these factors are stated in cases cited by the defendant, *e.g.*:

". . . the type, quality and amount of material in the bridge that was damaged, the reasonable value of the labor in constructing such a bridge, and shall bear in mind the age, depreciation and condition of the bridge that was destroyed." *H. L. Johnson v. Board of County Commissioners*, 138 Colo. 392, 395, 336 P.2d 300 (1959).

The case relied upon by defendant also cites 25 C.J.S., *Damages*, sec. 157(a)(2), p. 807, stating that:

" 'In establishing the actual or intrinsic value of property having no market value, wide latitude in the evidence is permissible, and resort may be had to *any* facts which fairly tend to show such actual value. Thus, in determining the actual or intrinsic value of such property, *or its value to the owner*, it has been held proper to admit evidence showing original cost, the replacement cost, the age of the property, *its use and utility*, and its condition.' " (Emphasis supplied.) *Id.* at 395.

Thus, the very authorities upon which defendant relies do not limit the proof of damages to the replacement cost less a deduction for depreciation.

McCormick, *Damages* (hornbook series), sec. 45, pp. 171–72, discusses the problem of assessing damages when there is no market value:

"[T]he court's freedom to control the result is preserved by insistence that the measure of damages is *not* original cost less depreciation nor replacement cost less

depreciation; these are merely 'factors' for consideration. The ultimate standard is value to the plaintiff in the particular case." (Emphasis in original.)

While this wide latitude for the admission of evidence of value has been found to be particularly appropriate in respect to personal property, it is not confined thereto. It is an appropriate measure wherever there is not an ascertainable market value. Market value is only a method of arriving at value to the owner. The reason market value is the usual standard is that, in respect to a broad range of property, a loss can be made good by going into the open market and buying an equivalent substitute. Thus, it is always the value to the owner, to the injured party, that is the measure of damages, but market value is just one way to measure such damages.

The concept of market value is also bound up with the concept of certainty. There is a myth in the law of damages that, to be recoverable, damages must be certain. The myth is a verity if the rule means that a judge or any trier of fact must be certain of the fact of damage, but there is no requirement of absolute certainty in the pecuniary quantum or measurement of damages. Because market value frequently establishes a quite certain measurement of damages, too often is the lack of a market value equated with an uncertainty that will defeat reasonably ascertainable damages. In the instant case, it appears that the defendant, and the appeals court, took the position that the plaintiff was not entitled to reasonably ascertainable damages based upon the available eclectic factors but only upon those damages whose quantum could be proved with absolute and objective certainty.

The rule of certainty is nevertheless a "standard requiring a reasonable degree of persuasiveness" (see, McCormick, *Damages,* sec. 26, p. 99) by which a trial

judge can insist that a jury base its award on something more than "guesswork." McCormick ventures the opinion that the rule of certainty is in any event a misnomer and that the rule should be one of "probability." He conjectures that the rule of certainty is based upon a lack of confidence in the jury system. Even where certainty is the proper rule, McCormick suggests that the jury need only be concerned with "reasonable certainty." *Id.* at 100.

Even where the rule of certainty is applicable as an ideal in terms of a device to control juries, the following modifications are applicable:

"(a) If the fact of damage is proved with certainty, the extent or amount may be left to reasonable inference.

"(b) Where the defendant's wrong has caused the difficulty of proof of damage, he cannot complain of the resulting uncertainty.

"(c) Mere difficulty in ascertaining the amount of damage is not fatal.

"(d) Mathematical precision in fixing the exact amount is not required.

"(e) If the best evidence of the damage of which the situation admits is furnished, this is sufficient." McCormick, *Damages,* sec. 27, p. 101.

The instant case is not one that calls for a literal application of the usually applied rule of certainty, *e.g.,* market value before and after. The fact of damage is certain, and the responsibility for the loss devolves totally on the wrongdoer. He can hardly complain that the value is not exactly ascertainable when it is his wrong that deprived the town of an admittedly valuable property, the valuation of which poses some difficulty.

" '[W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of damages as a matter of just

and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.' " (Citing, *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563.) McCormick, *Damages*, sec. 27, p. 102.

In *Harvey v. Wheeler Transfer & Storage Co.*, 227 Wis. 36, 277 N.W. 627 (1938), we held that the measure of damages for the destruction of property having no readily ascertainable market value is the value to the owner in light of the owner's use of the property. While *Harvey* was concerned with the valuation of converted personal property, the underlying problem is the same as that in the instant case—the property had no readily ascertainable and certain market value. Thus, while personal property cases can be distinguished on the basis of the nature of the property, it is a distinction without a difference. While it is true that, in respect to some personal property, sentimental value should be given deference—hardly a factor in respect to a bridge—the problem is substantially the same, the valuation of nonmarketable property.

As in the case of personal property, where the testimony of valuation by the owner is admissible, so too is the valuation given by the town chairman, though obviously such testimony is not conclusive as to value.

We conclude that the testimony of the town chairman was admissible as being that of the "owner." It is conceded by the defendant that, if Wagner is the owner or can speak for the owner, the testimony was admissible. *See, Trible v. Tower Insurance Co.*, 43 Wis. 2d 172, 187, 168 N.W.2d 148 (1969) ; *Farley v. Spring Garden Insurance Co.*, 148 Wis. 622, 627, 134 N.W. 1054 (1912) ; *Quinlan v. Coombs*, 105 Wis. 2d 330, 339, 314 N.W.2d

125 (Ct. App. 1981) ; *Estate of Ensz*, 66 Wis. 2d 193, 209, 223 N.W.2d 903 (1974).

We think that the argument that the town chairman cannot testify for or on behalf of the town as the owner is ill-founded. Reliance is placed upon *McClure v. Village of Browns Valley*, 143 Minn. 339, 341, 173 N.W. 672 (1919). There, the village president attempted to give his valuation of a bridge. It was rejected because he had no intimate knowledge of the bridge. The Minnesota court conjectured that the rule allowing an owner to testify was predicated on the owner presumptively having an intimate knowledge of the property; and, in any event, the village, not the village president, was the owner. If that predicate were true, the evidence or testimony of an owner of property as to value in Wisconsin would be inadmissible unless intimate knowledge and acquaintanceship with the property were first shown. This has never been required. We believe the Minnesota holding to be incorrect. Mere ownership is enough. The intimate knowledge of the property goes to the weight to be afforded the evidence, not its admissibility.

Here, we conclude that, because a corporation can only speak through its officers, the town chairman's testimony as to value was admissible. *See, City of Kiel v. Frank Shoe Mfg. Co.*, 245 Wis. 292, 14 N.W.2d 164 (1944). Corporations, municipal or otherwise, are persons under the law which can speak only through their officers.

The Minnesota case relied upon by the defendant is in its rationale, though not its holding, persuasively in favor of the plaintiff's point. While we conclude that, even were the town chairman not familiar with the bridge, he could have given his opinion as to its value, but his opinion would have little weight. In the instant case, he testified that he had very extensive experience with bridges in general and an intimate knowledge of

the particular bridge. This is in marked contrast to the facts in the *Browns Valley* case. Here the town chairman could testify as an owner; and because of the principal reliability factor referred to in the *Browns Valley* case—an intimate knowledge of the property—the jury could give great weight to his valuation. He had been familiar with the bridge all of his life, he had inspected it on numerous occasions—most recently three months prior to the accident. Moreover, as town chairman, he was aware of the value—economic, social, and recreational—of the bridge to the town.

While one could question his method of quantifying the value of the old bridge on the basis that the load limitation of the old bridge was one-fifth that of the new, this goes only to the weight to be attributed to his testimony, not to its admissibility.

As was acknowledged at oral argument, the trial judge allowed great latitude for the defendant to attack the town chairman's method of valuation. The jury had ample opportunity to weigh the evidence which was, however, clearly admissible. The trial judge correctly held that the town chairman could testify as an owner, but that the weight given to the testimony was for the jury.

While the town chairman was not "qualified" as an expert in the course of the trial, it is apparent that, by his experience on the highway committee, he probably could have been, at least in respect to the state of repair and maintenance of bridges. In addition, his opinion was admissible under sec. 907.01 of the Rules of Evidence:

"Opinion testimony by lay witnesses. If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions

or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

One question as a matter of law remains to be explored: What recognition has this court given in past cases to the value of property for which there is no market value but obviously is of value to the owner? The case of *Steel v. Ritter*, 16 Wis. 2d 281, 114 N.W.2d 436 (1962), is instructive and dispositive. In that case, it was urged that the building, an old barn, which had been destroyed by arson, was valueless, because it was, as a matter of its age—over eighty years old—fully depreciated and was in a dilapidated condition. The court held that a realistic (*i.e.,* apparently a straight-line accounting approach) depreciation would be unfair, for it would leave nothing for the plaintiff, to whom it had use and value. It pointed out that, where there was proof of value to the owner, irrespective of the depreciation or obsolescence of the property, that value was susceptible of proof, such proof was admissible, and the value to the owner was the proper measure of damages.

Here, proof was offered that could be accepted or rejected by the jury. It was accepted. The town chairman testified that the bridge was in good condition, that there were no plans to replace it. The engineering expert, Wilhelm, testified that a steel-truss bridge like the Central Avenue bridge was easily repairable and could be maintained and repaired for a period well beyond the ten-year period. He estimated its value, just on the basis of cost of reproduction less depreciation, to be $24,000. There was, in addition, evidence that the cost in 1977 of reconstructing a bridge of the type destroyed would be $57,000. Rebuttal testimony by the town adduced a value or cost of reproduction of the bridge in 1977 to be $103,000.

Joseph Wagner, the town chairman, came forward with numerous facts in respect to the value of the bridge to the owner that were not directly related to market value—the utility to the town, the state of repair of the bridge, its usefulness from both an economic and social viewpoint—and gave the opinion that the bridge was worth $40,000.

The jury was free to discount that figure on the basis of the defendants' arguments and, to some extent, it apparently did so, for the verdict was less—$34,000.

That figure was not unreasonable. The jury reached a fair and reasonable approximation of the damages based on all the evidence.

"In *Essock v. Mawhinney, supra* at 270 [3 Wis. 2d 258, 88 N.W.2d 659 (1958)], the court favorably quoted the following from 15 Am. Jur. *Damages* sec. 23, at 414:

" '[I]t is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This view has been sustained where, from the nature of the case, the extent of injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances all that can be required is that the evidence with such certainty as the nature of the particular case may permit lay a foundation which will enable the trier of fact to make a fair and reasonable estimate. . . .' " *Cutler Cranberry Co., Inc. v. Oakdale Electric Cooperative,* 78 Wis. 2d 222, 254 N.W.2d 234 (1977).

*See,* also, *Metropolitan Sewerage Comm. v. R.W. Construction, Inc.,* 78 Wis. 2d 451, 463, 255 N.W.2d 293 (1977), citing with approval *Specialty Assembling & Packing Co. v. United States,* 174 Ct. Cl. 153, 184, 355 F.2d 554 (1966):

" 'The ascertainment of damages is not an exact science. [citing case] Hence, it is not essential that the

amount of damages be ascertainable with absolute exactness or mathematical precision. [citing cases] It is enough if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation. [citing case] In estimating damages, the Court of Claims occupies the position of a jury under like circumstances; and all that the litigants have any right to expect is the exercise of the court's best judgment upon the basis of the evidence provided by the parties. [citing case]' "

The jury did just that in the present case. It exercised its best judgment.

While different fact finders could come up with different damages in a case such as this, all that can be asked is that the jury arrive at a figure that is defensible under the evidence. Although we cannot conclude that there is only one correct figure, the damage result is supported by the evidence and must be sustained.

Certainly, the tortfeasor ought not to be heard to complain that, because of his wrong, the town has no substantial redress because the property destroyed, though of great value to the owner, did not have a value that could be neatly and exactly determined by the market or by routine accounting methods.

*By the Court.*—Decision reversed.