IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 4, 2010 Session

**EARL FAULKNER, ET AL. V.
TOM EMMETT CONSTRUCTION COMPANY**

**Appeal from the Chancery Court for Knox County**
**No. 170184-2     Michael W. Moyers, Chancellor**

**No. E2010-00361-COA-R3-CV - FILED NOVEMBER 18, 2010**

Earl and Faye Faulkner ("Plaintiffs") hired Tom Emmett Construction Company ("Defendant") to construct a new driveway at their home in Knox County. Plaintiffs refused to pay $8,000 of the total $18,000 contract price because they were dissatisfied with the workmanship of the driveway. Plaintiffs sued Defendants seeking as damages what it would cost to remove and replace the allegedly defective driveway. Defendant asserted that the driveway was properly constructed and filed a counterclaim for the remaining $8,000 balance owed on the oral contract. Following a bench trial, the Trial Court concluded that any problems with the driveway were not sufficient to require that it be removed and replaced. Because there was a problem with how the concrete on one portion of the driveway had been poured, the Trial Court required Plaintiffs to pay Defendant only $5,000 of the remaining $8,000 owed on the contract. Plaintiffs appeal. We affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

George F. Legg and Charles D. Waller, Knoxville, Tennessee, for the Appellants, Earl and Faye Faulkner.

Daniel Kidd, Knoxville, Tennessee, for the Appellee, Tom Emmett Construction Company.

# OPINION

## Background

Plaintiffs hired Defendant to install a concrete driveway at their home located in Knox County. Plaintiffs claimed the driveway was defectively installed, and this lawsuit seeking damages eventually was filed. The agreed upon amount for the installation initially was $15,000. According to the complaint:

> The work undertaken by the Defendant was done extremely poorly and has resulted in very poor overall quality of the driveway and concrete finish. To wit, and including, but not limited to: (a) there exist ridges, humps, screed marks, boot prints, and unfinished slurry on top of the concrete finish; (b) the contraction joints placed in the concrete by the Defendant are of very poor quality and are misplaced; (c) the Defendant has improperly divided the concrete slab into long rectangles instead of squares with contraction joints no further apart than 20 feet as required by the *Building Code Requirements for Structural Concrete* which will result in additional cracks in the concrete slab; (d) the Defendant failed to place expansion material between the concrete slab and the wall of the Plaintiffs' home; (e) an existing railroad tie which is part of the Plaintiffs' lawn edging was improperly used by the Defendant as an end form for the concrete slab; (f) the Defendant has improperly placed the concrete slab directly on top soil instead of upon a proper uniform stone base resulting in the concrete slab settling and cracking due to compression of the top soil; (g) there exist great variations in slab thickness. In some areas the concrete slab is 4 inches thick and in other areas the slab is only 2 inches thick which has produced weak areas and strong areas all over the surface area of the concrete slab; (h) the Defendant has improperly installed the welded wire fabric and rebar reinforcement in the concrete slab. The welded wire fabric and rebar were not placed on stakes to hold it in place when the slab was poured, but was allowed to lie directly on the ground. The result is that the welded wire fabric and rebar are totally ineffective to reinforce the integrity of the concrete slab in that it is not properly imbedded into the concrete slab, and; (i) the

-2-

welded wire fabric is not overlapped which will result in cracks developing in the locations where it was not overlapped.

Based on the foregoing allegations, Plaintiffs claimed the driveway was not completed in a workmanlike manner and was defectively installed in such a way that Plaintiffs will have no choice but to have the driveway completely removed and replaced. Plaintiffs explained that they paid Defendant $10,000 of the original $15,000 contract price, and Defendant thereafter improperly filed a lien against Plaintiffs' property for the balance it claimed they owed. Plaintiffs sought damages in the amount of $55,000, as well as removal of the lien.

Defendant answered the complaint and generally denied any liability to Plaintiffs. Defendant denied that the driveway was defectively installed. According to Defendant's answer:

> The defendant . . . defend[s] against this action on the basis of unclean hands and/or equitable estoppel in that the plaintiffs refused to enter into a written contract and at all times were intimately involved in the entire process of the driveway's installation and the plaintiffs made various decisions against the sound advice of the defendant and insisted the defendant perform according to their demands and requests and furthermore, the plaintiffs voiced no complaints concerning the driveway or the quality of workmanship until the defendant requested payment on the outstanding bill.

Defendant requested that the complaint be dismissed and, in a counterclaim[1], requested that it be awarded the remaining balance owed on the contract price.

This case was tried in August 2009, with the first witness being plaintiff Earl Faulkner ("Faulkner"). Faulkner decided to use Tom Emmett Construction Company to build the driveway after looking through the yellow pages. He first met Tom Emmett ("Emmett") in November of 2006. Faulkner told Emmett that he wanted a four-inch driveway on a gravel base with rebar and wire mesh. Emmett's initial estimate was $18,000, but it later was reduced to $15,000. They later changed the size of the new driveway to make

---

[1] When Plaintiffs filed their complaint in the Knox County Chancery Court, they already had been sued by Defendant in the Knox County General Sessions Court. These lawsuits were consolidated and Defendant's sessions court lawsuit was treated as a counterclaim in Chancery Court.

it closer to the house, but Faulkner stated that during this entire process, he never agreed to an increase in the $15,000 contract price.

Faulkner testified that while the driveway was being constructed, he observed several things that he thought were being done improperly. According to Faulkner, the wire mesh was placed under the rebar, but was supposed to be on top of the rebar. In various places, the rebar improperly was placed on the ground instead of being put on chairs. Faulkner allegedly voiced his concerns to Emmett, but nothing was done to correct these problems. Faulkner stated that gravel never was brought to the site or used in the driveway before the concrete was poured. The concrete was poured up to the house and no expansion joints were used. Faulkner also testified that the surface area of the concrete was not smooth and in some places, the concrete was only 2½ inches thick, as opposed to the agreed-upon 4 inches. Faulkner paid Defendant $10,000 and refused to pay the balance due to the alleged poor quality of the driveway. Faulkner denied ever agreeing to an increase in the amount of the original agreement from $15,000 to $18,000 due to the size of the driveway increasing. Faulkner described the overall general appearance of the driveway as "horrible" and stated that the whole driveway needed to be replaced. Approximately one month after the driveway was completed, Faulkner filed a complaint against Defendant with the contractor's board in Nashville.

Plaintiffs called Paul David Tucker ("Tucker") as an expert witness.[2] Tucker is a professional engineer with a bachelor's degree in engineering and a master's degree in structural engineering from the University of Tennessee. Tucker is licensed as a professional engineer with the State of Tennessee and numerous other states. Tucker operates and owns a company called Professional Engineering and Inspection Services. Tucker has inspected many concrete projects. Tucker testified that Plaintiffs called him and requested that he inspect their driveway. Tucker did not know Plaintiffs before their request. During his inspection, Tucker talked to Plaintiffs and relied on information they provided. Tucker stated his opinion that the driveway as constructed by Defendant does not conform to the recognized standard of care for the construction of a reinforced concrete driveway.

Tucker testified to what he considered problems with the driveway as constructed by Defendant. According to Tucker, the driveway was poured over organic material such as leaves and this eventually could cause cracks. In turn, these cracks could lead to further problems because water will permeate then freeze/thaw, etc., causing the

---

[2] Defendant objected to Tucker's qualifications to testify as an expert in this case. After Defendant was given the opportunity to voir dire the witness, the Trial Court determined that Tucker was qualified to testify as an expert. Because Tucker's qualifications as an expert are not an issue on appeal, we have omitted the voir dire testimony.

cracks to widen. Tucker added that the driveway was not properly compacted and there were footprints in the concrete. Tucker also testified that the wire mesh was placed on the ground and would not provide proper reinforcement. To be properly installed, the reinforcement should be in the top one-third of the concrete. Similarly, the rebar did not have anything supporting it and was placed on the sub-base. Control joints were not properly placed. The driveway had a very poor finish and was discolored. The thickness of the concrete varied from 2½ inches to 4 inches, resulting in the driveway being stronger in some areas and weaker in others.

According to Tucker, all of the various problems would reduce the overall useful life of the driveway. Because there were so many problems with the driveway, including structural problems, Tucker concluded that the driveway constructed by Defendant would have to be completely removed and replaced. Tucker compiled six estimates from different companies with respect to how much it would cost to completely remove and replace the driveway. The average of these estimates was $30,000.

On cross-examination, Tucker admitted that most of the problems with the driveway will not have "much effect on the actual use of the driveway," but over time the problems could lead to more and perhaps larger cracks in the concrete. Tucker added that the problems will cause the driveway to degrade faster than a driveway that was built correctly. Tucker stated that he would not recommend the use of rebar with a four inch slab of concrete. Since Plaintiffs wanted a four inch slab of concrete, the use of rebar would cause the driveway not to meet code. In other words, even if the driveway had been built exactly as Plaintiffs wanted, there still would have been problems. According to Tucker, a concrete slab needs to be six inches deep before rebar can properly be used. Tucker's estimated cost to replace the driveway would decrease by $3,234 if no rebar was used.

The next witness was Emmett. At the time of trial, Emmett was seventy-nine years old and had been in the concrete business since 1946. Emmett is licensed by the State of Tennessee as a concrete contractor and has been so licensed for the past thirty years.

Emmett and his son, Tom Emmett III, met with the Faulkners to give them an estimate on a new driveway. The original estimate was for $18,000. Eventually a second estimate was prepared. With this second estimate, there was to be a grass strip between where the current driveway was located and the expanded new section of driveway. Faulkner wanted a four inch thick driveway, wire mesh, and for the old driveway to be broken up and used to build up the new driveway so it would be more level. The second estimate was for $15,000.

According to Emmett, Faulkner began making changes almost immediately. Instead of using the old driveway as a base, Faulkner wanted it hauled off and gravel used. Faulkner also stated that he wanted rebar to be used in the driveway, which was not part of the original agreement. Eventually, Faulkner decided he wanted a bigger driveway so he could park an RV in the driveway. Faulkner enlarged the size of the driveway by eliminating the grass strip. Emmett told Faulkner that these additions would cost an additional $3,000. It was Emmett's understanding that Faulkner agreed to the new contract amount of $18,000.

Emmett stated that there was at least four inches of base on the driveway. As for the expanded section of the new driveway, no gravel base was needed although they did remove some of the topsoil. Emmett stated that Faulkner was aware of everything that was being done, and at times Faulkner even sat outside in a lawn chair watching them. Faulkner never complained about Defendant not using a gravel base for the expanded section of the driveway. The only complaints he ever made were about a tree and about a gate not being put back timely.

When the driveway was completed, Emmett gave Faulkner a bill for the remaining $8,000 that was owed and Faulkner stated that he would pay the bill in ten days. Emmett testified that he has poured concrete directly on the ground in the past and, in his opinion, it is more likely for there to be trouble with water accumulating if gravel is used as a base. The wire mesh was put down and the rebar was placed on top of the steel. Emmett stated that is the way Faulkner wanted it done and "that's the way it was done." Emmett testified that Plaintiffs' driveway was constructed in the same manner that driveways are constructed by other contractors. Emmett acknowledged that an expansion joint was not used between the driveway and the house, but he stated that is the way Faulkner wanted it constructed. Emmett told Faulkner that rebar was not necessary in this driveway, but Faulkner insisted that rebar be used, so it was.

Emmett stated his opinion that nothing was done wrong when constructing this driveway. After being qualified to testify as an expert, based primarily on his working with concrete for the past sixty years, Emmett testified that the quality of the work on Plaintiffs' driveway did not fall below the applicable standard of care.

Roy Braden ("Braden") was called as a witness by Defendant. Braden is a building official with Knox County Code Administration and Inspection. Braden has worked in this position for the past eighteen years. Knox County currently utilizes the 2006 International Code Counsel code. Prior to that, Knox County used the 1999 standard building code. These codes address residential driveways only in one place and that involves vapor barriers, which is not at issue in this case. According to Braden, Knox County has not

adopted or passed any codes addressing residential driveways. Knox County does not inspect residential driveways.

The final witness was Mr. Emmett's son, Tom Emmett III ("Son"). Son worked on the driveway and was present when the agreement was made to construct the driveway. After the original agreement was reached, Plaintiffs changed the specifications and added a portion to the driveway. Son stated that his father would stop by the work site every day while the driveway was being constructed. Son was the primary supervisor on Plaintiffs' driveway. Pieces from the old driveway were used as a base for that portion of the driveway where the old driveway was located. The new driveway was bigger than the original driveway, and there was no base used for the part of the driveway that was new. With respect to the expanded portion of the driveway, concrete was poured directly onto the topsoil.

Following trial, the Trial Court entered a Memorandum Opinion and Order finding and holding, in relevant part, as follows:

> In November 2006, the Plaintiffs met with the principal of Defendant Company regarding the construction of a concrete replacement driveway for their home. The Plaintiffs specified that they wanted a four (4) inch thick driveway reinforced with rebar and wire mesh. The Defendant estimated that he could complete the job for $18,000.00, but after negotiations and a change in the original design specs, the price was lowered to $15,000.00.
>
> Early on in the construction process, the Plaintiff testified that he believed that the installation of the wire mesh and rebar was incorrect, and thereupon the Plaintiff Mr. Faulkner began to extensively document the construction of the driveway with photography at every stage of the construction. Many of these photographs were introduced at trial. Although the Plaintiff testified that he had concerns about the manner in which the driveway was being poured, he did not raise them with the Defendant until midway through the pouring of the second part of the driveway. Ultimately, the Plaintiffs allowed the Defendant to complete the driveway, and they refused final payment because they were dissatisfied with the manner in which the job had been done.

The Plaintiffs immediately contacted a professional engineer, Paul Tucker, . . . and asked him to inspect the driveway and render an opinion. . . . [Mr. Tucker[3] testified] that the manner of construction was faulty in several respects, including inconsistent concrete thickness, improperly placed expansion joints, and improperly installed wire mesh and rebar within the driveway. Mr. Tucker stated that the manner in which the driveway was constructed did not meet the relevant standard of care for the construction of reinforced concrete driveways, citing design standards set forth in manuals issued by the American Concrete Institute. Mr. Tucker opined that the methods utilized in the construction of the driveway would shorten the driveway's usable life, but gave no estimate regarding how much that usable life would be shortened.

Mr. Tucker went on to testify . . . that the driveway could not be repaired, but would have to be removed and replaced in its entirety, at a cost which Mr. Tucker estimated at approximately $30,000.00. The Court notes that although the Plaintiffs produced an exhaustive collection of photographs of the driveway as constructed, the only evidence produced that the driveway as completed was unsatisfactory was a single photograph showing the light imprint of a boot in the concrete, a photograph showing a slight difference in color between one pouring and another pouring in the driveway, photographs showing some rough surfaces on the driveway, and Mr. Tucker's testimony about the potential diminution in the useful life of the driveway which might be occasioned by the manner in which the rebar and mesh were installed.

The Defendant produced Mr. Roy Braden, the building inspector for Knox County Government, who testified that Knox County had not adopted the reinforced concrete codes relied upon by Mr. Tucker. Mr. Braden also testified that Knox County had no relevant codes governing standards for the construction of concrete driveways, and testified further that Knox County does not require the issuance of building permits

---

[3] The Trial Court noted that on several occasions Defendant objected to Mr. Tucker's competency to testify as an expert in reinforced concrete. These objections were overruled.

for the construction of driveways nor inspect residential driveways for governmental approval. Finally, the defense produced the testimony of Mr. Tom Emmett . . . who testified regarding his long experience in the concrete construction business. Mr. Emmett testified that the driveway was built in the manner in which he has always constructed them, and testified that in his opinion he met the standard of care. . . .

[G]iven that Knox County has not adopted the American Concrete Institute rules and regulations for driveways relied upon by Mr. Tucker in opining with regard to the standard required of reinforced concrete contractors, and given the fact that Knox County has chosen not to regulate, in any fashion, the construction of concrete driveways within its jurisdiction, the Court questions whether Mr. Tucker's testimony is sufficient to establish a standard of care for concrete driveway construction in Knox County, if in fact any such standard of care actually exists.

In any event, the Court believes that the Plaintiffs' claims must fail here because the Court finds that the measure of damages insisted upon by the Plaintiffs is not reasonable. The Plaintiffs rely for their measure of damages upon the case of *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535 (Tenn. App. 2005). In that case, the Court of Appeals held that "[a]s a general rule, the measure of damages for defects and omissions in the performance of a construction contract is the **reasonable** cost of the required repairs." (Emphasis added) Plaintiffs' counsel properly points out that although the diminution of value to the residence occasioned by improper construction is an acceptable alternative measure of damages, it is incumbent upon the Defendant to present evidence that would allow the Court to award damages based upon such alleged diminution. In this case, neither party produced any evidence whatsoever regarding the real or potential diminution in value of the Plaintiffs' residence occasioned by the allegedly negligent construction of the driveway. Upon the direct questioning of the Court, Plaintiffs' counsel stated that it was "all or nothing;" that the only evidence of damages was the cost to [replace] the driveway, that the driveway could not be repaired but only

-9-

replaced, and that the cost of replacing the driveway would be approximately $30,000.00.

The Court notes that throughout its decision in *GSB Contractors*, the Court of Appeals stressed that the measure of damages in a case such as this would be the reasonable cost of repairs. Again the Court would note that while the Plaintiffs exhaustively documented the construction of the driveway, other than a couple of photographs detailing the aesthetic issues with the driveway (e.g., color variations, rough surfaces and a boot print in the concrete), they produced absolutely no evidence, other than the speculative opinions of Mr. Tucker, that the driveway was unusable or defective. The Plaintiffs did not testify that they were not using the driveway, and in fact collective Exhibit 4 includes a photograph of a large utility van parked in the driveway. Based on the evidence presented, the Court does not find that having produced a driveway in daily use by the Plaintiffs, the Defendant should now be required to pay twice the original contract price to the Plaintiffs to correct problems that do not now exist with the driveway and are based only and entirely upon Mr. Tucker's speculation regarding what might happen to the driveway at some point in the future. This Court does not believe that the damages requested by the Plaintiffs are a reasonable measure of the cost of repairs, and as the Plaintiffs have provided no other measure upon which the Court may base its judgment, it follows that the [Plaintiffs have] failed to carry [their] burden of proof with regard to the question of damages by a preponderance of the evidence with regard to the construction of the driveway as a whole.

However, a question remains regarding an extension of the original driveway, which was considered a modification of the original contract and for which the Plaintiffs were charged an additional $3,000.00. It was uncontested that this extension was poured upon unprepared soil in a manner that even the Defendants agreed was not proper. The Court shall order that the Plaintiffs will pay to the Defendant the remaining $5,000.00 originally agreed upon by the parties and shall be relieved of any responsibility to pay the additional $3,000.00 which the Defendant charged for the apparently defective extension. Upon

-10-

payment by the Plaintiffs of the remaining $5,000.00 originally agreed to in the contract, the Defendant will immediately release any liens which remain upon the Plaintiffs' property for the securing of the contract price. . . . (footnote added; emphasis in the original)

Plaintiffs appeal claiming the Trial Court erred in the amount of damages it awarded and that they are entitled to the full replacement cost. Plaintiffs further claim that the Trial Court erred when it required them to pay Defendant the remaining $5,000 owed on the original contract amount, and when it essentially awarded them only $3,000 for the defective driveway extension.

## **Discussion**

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). In *Beaty v. McGraw*, 15 S.W.3d 819 (Tenn. Ct. App. 1998), this Court stated:

> Determinations concerning the amount of damages are factually driven. *See Loftis v. Finch*, 491 S.W.2d 370, 377 (Tenn. Ct. App. 1972). Thus, the amount of damages to be awarded in a particular case is essentially a fact question. *See Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc.*, 919 S.W.2d 36, 42 (Tenn. Ct. App. 1995); *Buice v. Scruggs Equip. Co.*, 37 Tenn. App. 556, 571, 267 S.W.2d 119, 125 (1953). However, the choice of the proper measure of damages is a question of law to be decided by the court. *See American Trust Inv. Co. v. Nashville Abstract Co.*, 39 S.W. 877, 881 (Tenn. Chan. App. 1896); *see also Business Men's Assurance Co. v. Graham*, 891 S.W.2d 438, 449 (Mo. Ct. App. 1994); *Town of Fifield v. State Farm Mut. Auto. Ins. Co.*, 119 Wis.2d 220, 349 N.W.2d 684, 686 (Wis. 1984).

*Beaty*, 15 S.W.3d at 827. *See also GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005).

As we read the Trial Court's judgment, Plaintiffs' claim for $30,000 to completely remove and replace the driveway failed for two reasons. First, except for the extension, Plaintiffs failed to prove that the driveway was defectively installed. Second, even if there were some other problems with the driveway, the problems were not of sufficient magnitude such that it would be reasonable to require removal and replacement of the entire driveway. In its memorandum opinion, the Trial Court expressly stated that:

> the only evidence produced that the driveway as completed was unsatisfactory was a single photograph showing the light imprint of a boot in the concrete, a photograph showing a slight difference in color between one pouring and another pouring in the driveway, photographs showing some rough surfaces on the driveway, and Mr. Tucker's testimony about the potential diminution in the useful life of the driveway which might be occasioned by the manner in which the rebar and mesh were installed.

The Trial Court later noted that the driveway was being used by Plaintiffs and that the only evidence presented that the driveway was not properly constructed was "speculative" opinions by Tucker as to a reduced life expectancy.

In all fairness to the parties, there was evidence presented to support the respective positions of both sides. It is the Trial Court's function to resolve such a conflict. That is exactly what it did. We will not disturb the Trial Court's factual findings unless the evidence preponderates against those findings. We conclude that the evidence does not preponderate against the Trial Court's findings that Plaintiffs failed to prove that the driveway as a whole was defectively constructed and that it would not be reasonable for Plaintiffs to remove and replace the entire driveway at Defendant's expense. The judgment of the Trial Court in this regard is affirmed.

The next issue surrounds the Trial Court's requirement that Plaintiffs pay the remainder of the original $15,000 contract price, but that they should be relieved from paying the additional $3,000 for the concrete extension that was improperly poured. As stated by this Court in *Lee Masonry, Inc. v. City of Franklin*, No. M2008-02844-COA-R3-CV, 2010 WL 1713137 (Tenn. Ct. App. Apr. 28, 2010):

> "A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract. Thus, in cases where both parties have not fully performed, it is necessary for the courts to

determine which party is chargeable with the first uncured material breach."

*Lee Masonry*, 2010 WL 1713137, at *10 (quoting *McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990)).

We agree with the Trial Court that there was a modification of the original $15,000 contract which added a driveway extension and increased the contract amount to $18,000. After this modification, there was one contract in effect with an $18,000 contract price. We conclude that Defendant's admitted failure to use a gravel base prior to pouring the driveway extension constitutes a material breach of the contract, thereby prohibiting Defendant from challenging Plaintiffs' later material breach of failing to pay the balance of the contract price. Accordingly, we modify the Trial Court's judgment and hold that Plaintiffs are not required to pay any of the $8,000 outstanding balance on the contract and Defendant must remove any lien on Plaintiffs' property. As modified, the judgment of the Trial Court is affirmed. Any remaining issues are pretermitted.

### Conclusion

The judgment of the Trial Court is affirmed as modified. This cause is remanded to the Chancery Court for Knox County solely for collection of the costs below. Costs on appeal are taxed to one-half to the Appellants Earl and Faye Faulkner, and their surety, and one-half to the Appellee, Tom Emmett Construction Company.

_____
D. MICHAEL SWINEY, JUDGE

-13-