OPINION
{¶ 1} Defendant-appellant Martin Dean Morris, Jr. appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of domestic violence, in violation of R.C. 2919.25(A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 3, 2004, the Stark County Grand Jury indicted appellant on the aforementioned charge. Appellant entered a plea of not guilty to the charge at his arraignment on May 28, 2004. The matter proceeded to jury trial on June 23, 2004.
 {¶ 3} After voir dire, appellant moved the trial court to disqualify the prosecutor. Appellant argued the prosecutor had a potential conflict of interest because she had represented appellant's cousin, Scott Krach, who would be called as witness, in a custody matter two or three years prior while the prosecutor was working with Stark County Legal Aide. The trial court questioned the prosecutor regarding her contact with the witness subsequent to the custody matter. The prosecutor advised the trial court she had not had contact with Krach after the termination of the previous representation. The trial court overruled appellant's request.
 {¶ 4} The following evidence was adduced at trial.
 {¶ 5} On March 7, 2004, Martin Morris, Sr. ("Morris") returned to his home after attending calling hours. When Morris arrived home, appellant's girlfriend, Angela Godsey, advised Morris appellant was in the other room, sleeping. Morris instructed Godsey to wake appellant because the two could no longer stay at his apartment. Godsey went into the bedroom and returned to the living room a few minutes later. Morris asked her if she told appellant they needed to leave. Godsey advised him she had, but noted appellant had gone back to sleep. Shortly thereafter, appellant came out of the bedroom, screaming, and raving and ranting. Morris ordered him out of the apartment. Appellant punched Morris in the face, and knocked him back against a wall. Morris pushed appellant back, but appellant flipped Morris upside down and threw him onto the floor. Appellant continued to beat Morris.
 {¶ 6} Godsey exited the apartment and ran around the corner to get appellant's cousins, Jason and Scott Krach as well as their friend Jason Philips, to break up the fight. When Philips, Jason Krach, and Scott Krach arrived, they found Morris, with a bloody lip, lying on the ground. Appellant was standing in the room, screaming at Morris. Jason Krach and Jason Philips held appellant back and pushed him outside. Trying to get back into the apartment, appellant beat on the door and broke the glass window. Morris retreated to his bedroom and returned with a weapon. By that point, appellant was in the yard, but refused to leave. Morris fired into the ground. Appellant subsequently left the premises.
 {¶ 7} Officer Kevin Sedares of the Canton Police Department arrived with his partner, Officer Overdorf, to assist the officers who originally had been dispatched to the scene. Officer Sedares spoke with Morris, whose face and shirt were bloodied. Morris was transported to the hospital where he was treated for a bruised kidney and received stitches in his mouth. As a result of the altercation, Morris' dentures were broken.
 {¶ 8} After hearing all the evidence and deliberations, the jury found appellant guilty of one count of domestic violence. The trial court proceeded immediately to sentencing. The trial court imposed the maximum sentence of five years on appellant, noting appellant's extremely long history of violent offenses and appellant's lack of amenability to community control sanctions. The trial court further added, although it did not believe that the instant assault upon his father was the worst form of the offense, the trial court did find appellant posed the greatest likelihood of recidivism. The trial court memorialized the conviction and sentence via Entry filed June 29, 2004.
 {¶ 9} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 {¶ 10} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISQUALIFY THE PROSECUTOR BECAUSE OF A CONFLICT ON INTEREST THE PROSECUTOR HAD BY VIRTUE OF HER REPRESENTATION AT A WITNESS AND HER NON-DISCLOSURE OF THAT FACT TO THE DEFENDANT OF [SIC] DEFENDANT'S COUNSEL PRIOR TO TRIAL.
 {¶ 11} "II. THE TRIAL COURT ERRED BY SENTENCING THE DEFENDANT TO A MAXIMUM SENTENCE WHEN THE COURT FOUND THAT THIS WAS NOT THE WORST FORM OF THE OFFENSE.
 {¶ 12} "III. THE TRIAL COURT ERRED BY NOT ALLOWING THE DEFENDANT'S COUNSEL TO FULLY EXAMINE WITNESSES AND BY ALLOWING IN HEAR-SAY TESTIMONY OVER DEFENSE COUNSEL'S OBJECTIONS."
 I {¶ 13} In his first assignment of error, appellant contends the trial court erred in denying his motion to disqualify the prosecutor. Appellant asserts the prosecutor had a conflict of interest because she previously represented one of the State's witnesses and failed to disclose that fact to the defense prior to trial.
 {¶ 14} When reviewing an allegation of a prosecutor's misconduct or disqualification, the reviewing court must review the matter on a case-by-case basis. See, State v. White, 2004-Ohio-5200; State v.Waggaman (Aug. 20, 1997), Medina App. No. 96-CA-0078; State v. Bryant
(June 26, 1997), Meigs App. No. 96-CA-14; State v. Hiatt,120 Ohio App.3d 247; State v. Luna (Sept. 2, 1994), Huron App. No. H-93-24; State v. Perotti (May 15, 1991), Scioto App. No. 89-CA-1845;State v. Faulkner (Aug. 20, 1990), Preble App. No. CA89-04-007; State v.Jacobs (Jan. 3, 1990), Summit App. No. 14089. The mere appearance of impropriety is insufficient to warrant the disqualification of an entire prosecutor's office.
 {¶ 15} A decree disqualifying a prosecutor's office should only be issued by a court when actual prejudice is demonstrated. In making the determination, relevant factors may include: 1) the type of relationship the disqualified prosecutor previously had with a defendant, 2) the screening mechanism, if any, employed by the office, 3) the size of the prosecutor's office, and 4) the involvement the disqualified prosecutor had in the case. . State v. Vidu (July 23, 1998), Cuyahoga App. Nos. 71703 71704. Prejudice will not be presumed by an appellate court where none is demonstrated. State v. Freeman (1985), 20 Ohio St.3d 55.
 {¶ 16} Further, Crim. R. 16(B) provides, in pertinent part:
 {¶ 17} "(1) Information subject to disclosure.
 {¶ 18} * * *
 {¶ 19} (f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection. * * *
 {¶ 20} The record reveals, upon learning about the prosecutor's past representation of one of the State's witnesses, the trial court conducted an inquiry of the prosecutor. The trial court was satisfied the attorney-client relationship had terminated at the end of the custody case in which the prosecutor represented Scott Krach, and the prosecutor had not had contact with the witness until this matter arose. The trial court gave appellant the opportunity to cross examine Scott Krach as to the former attorney-client relationship. We find appellant has failed to demonstrate the existence of a conflict and any prejudice arising therefrom. Scott Krach's testimony merely corroborates the testimony of the other witnesses. Likewise, appellant has failed to show the State had a duty to disclose this relationship pursuant to Crim. R. 16.
 {¶ 21} Appellant's first assignment of error is overruled
 II {¶ 22} In his second assignment of error, appellant challenges the trial court's imposition of a maximum sentence. Appellant maintains because the trial court specifically found the offense was not the worst form of the offense, the trial court abused its discretion in sentencing him to a maximum sentence.
 {¶ 23} R.C. 2929.14(C) sets forth the following conditions under which a trial court may impose a maximum sentence: "(C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." We read this statute in the disjunctive. See State v. Comersford (June 3, 1999), Delaware App. No. 98CA01004. Consequently, a trial court may impose a maximum sentence if the trial court finds any of the above-listed offender categories apply. Additionally, a trial court must state its reasons supporting an R.C. 2929.14(C) maximum sentence finding. R.C. 2929.19(B)(2)(d).
 {¶ 24} The trial court did, in fact, state appellant had not committed the worst form of the offense. However, the trial court found appellant posed the greatest likelihood of recidivism, relating appellant's lengthy criminal history of violent offenses. The trial court also noted appellant had not been amenable to community control sanctions. Accordingly, we find the trial court sufficiently stated its findings and reasons under R.C. 2929.14(C).
 {¶ 25} Appellant's second assignment of error is overruled.
 III {¶ 26} In his final assignment of error, appellant submits the trial court erred in failing to allow him to fully examine witnesses and overruling appellant's objections to hearsay testimony.
 {¶ 27} Appellant focuses on two specific rulings of the trial court. The first involves defense counsel's cross-examination of the victim, Martin Morris, Sr. Appellant asserts the trial court prevented trial counsel from pursuing a beneficial line of questioning which would have helped impeach the credibility of the witness. The questioning proceeded as follows:
 {¶ 28} "Q. [Attorney for Appellant]: Yeah. And you just testified that you've had no contact with your son since the night of the incident?
 {¶ 29} "A. [Martin Morris, Sr.]: Not to my knowledge, no.
 {¶ 30} "Q. Didn't you testify under oath at the bond hearing that you had contact with him two or three times after the incident?
 {¶ 31} "A. No, I don't believe I did.
 {¶ 32} "Q. Well, if I would get the record from that bond hearing and show you —
 {¶ 33} "A. I may be mistaken, but, you know, it's — some of this is very confusing for me. I may be wrong. If I'm wrong I, you know.
 {¶ 34} "Q. When were you wrong? Did you or didn't you have contact with him? Because you were emphatic at the bond hearing that you did and that's why he had to stay in jail.
 {¶ 35} "A. I just ____ no, he ____
 {¶ 36} "THE COURT: Well, wait a minute. He's answered the question that he doesn't remember. I would suggest you not pursue that any further.
 {¶ 37} "MR. CUSMA: Yes, Your Honor." Tr. at 111.
 {¶ 38} The second ruling occurred during the State's direct examination of Jason Philips, which proceeded as follows:
 {¶ 39} "Q. [Prosecutor]: And what happened?
 {¶ 40} "A. [Jason Phillips]: I was at my buddy Scott's house watching some TV, and Angie [Angela Godsey] come down knocking on Scott's back door saying that we had ____
 {¶ 41} "MR. CUSMA [Defense Counsel]: Objection, Your Honor, testifying as to hearsay.
 {¶ 42} "THE COURT: I understand the objection, Mr. Cusma. I'll admit it under an exception.
 {¶ 43} "What did she say? Go ahead.
 {¶ 44} "THE WITNESS: Angie come down knocking on the — you know, pounding on the back door saying that we needed to go up to Martin, Jr. and Martin, Sr. were fighting. Sent us up there to go break up the fight." Tr. at 136.
 {¶ 45} Upon review of defense counsel's cross examination of Martin Morris, Sr., we find appellant was not prevented from a complete examination of the witness. The trial court simply advised defense counsel not to further pursue the one specific issue as to whether past incidental contact occurred between appellant and the witness as the witness had stated he did not remember. Defense counsel did not ask to approach the bench or make any argument to support the line of questioning. Defense counsel immediately moved to a different area of inquiry. Counsel was not prevented from cross examination of the witness.
 {¶ 46} With respect to the trial court's ruling on appellant's objection to Philips' testimony, we find the testimony was not offered for the truth of the matter asserted, but to explain why Philips went to Morris's apartment that evening. Assuming, arguendo, the testimony was hearsay, we find such was admissible under Evid. R. 803(1), as a present sense impression, and/or Evid. R. 803(2), as an excited utterance.
 {¶ 47} Appellant's third assignment of error is overruled.
 {¶ 48} The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, P.J. Farmer, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.