[Cite as *State v. Taylor*, 2013-Ohio-5751.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12CA18 |
| KENNETH E. TAYLOR | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal appeal from the Holmes County
Court of Common Pleas, Case No.
11CR087

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 20, 2013

APPEARANCES:

For Plaintiff-Appellee

STEPHEN KNOWLING
Holmes County Prosecuting Attorney
164 East Jackson Street
Millersburg, OH 44654

For Defendant-Appellant

JOHN BURNWORTH
Krugliak, Wilkins, Griffiths & Dougherty Co.
4775 Munson Street N.W.
Box 36963
Canton, OH 44735-6963

*Gwin, P.J.*

{¶1} Appellant Kenneth E. Taylor ("Appellant") appeals from the July 19, 2012 and November 7, 2012 judgment entries of the Holmes County Court of Common Pleas convicting and sentencing him after a jury trial of one count of Vandalism, a felony of the fourth degree in violation of R.C. 2909.05(B)(2) and one count of Theft, a felony of the fourth degree in violation of R.C. 2913.02(A)(1).

*Facts and Procedural History*

{¶2} The Holmes County Trail covers of approximately 27 miles, 15 of which have been paved. This project is currently under the direction of the Holmes County Park District. Previously, the Trail had been under the direction and control of the Holmes County Rails to Trails Coalition, a 501(C) Corporation. (1T. at 90; 119-120). Helen Taylor's property located in Killbuck Township (approximately 4 miles in length and 27 acres) was the last link in connecting the northern part of the Trail to the southern part of the Trail. (Id. at 91; 119). Helen Taylor was the sole owner of this property. Appellant is the son of Helen Taylor. Appellant never at any time had any legal interest in the property at issue.

{¶3} Located upon Mrs. Taylor's 27 acre parcel was two former railroad bridges designated Nos. 9 and 10. The bridges were made of steel and iron and spanned approximate 45 feet each in length. (1T. at 6; 84-85). *See* Trial Exhibits A, C12 and C14.

{¶4} This case involves the removal of those two bridges that were once part of an unused four (4) mile stretch of an old railroad corridor that bisected Appellant's family's property. The Appellant's family purchased the railroad corridor in 1996.

Although Appellant's elderly mother owns the railroad corridor and the surrounding land, Appellant was primarily responsible for the daily operations of the cattle farm that was located on the property. Appellant used the elevated railroad corridor as a place to keep cattle when the area flooded.

{¶5} There were multiple meetings over the years with Mrs. Taylor and her family including Appellant. During these meetings, first the Holmes County Rails to Trails Coalition and later the Holmes County Park District attempted to negotiate a purchase of the property at issue in order to complete the Trail, which would utilize Bridges 9 and 10 in place. Appellant was present at most if not all of the negotiating sessions. He openly expressed his opposition to the project. He was the central spokesperson for his mother and siblings.

{¶6} After many years of attempting to reach a negotiated settlement, the Park District began the process for an eminent domain action. As part of this process, they obtained a professional appraisal of the property in the amount of $83,000 dated February 6, 2008. At no time did Mrs. Taylor or any of her family obtain their own appraisal although they were advised of their right to do so. To further its objectives, the Park District retained the services of the Holmes County Prosecutor, Steve Knowling, ("Prosecutor") to represent it in an eminent domain action against the Taylors.

{¶7} On or about April 27, 2009, the Prosecutor signed a contract of representation with the Park District that was not limited in scope or duration. However, the Prosecutor did admit that the contract was specifically for the purpose of representing the Park District in the eminent domain action to acquire the Taylors' railroad corridor. According to the contract the Prosecutor agreed to perform legal

services for one-half the going rate for Millersburg attorneys; however, he never actually sent the Park District an invoice for legal services. On May 8, 2009, the Prosecutor sent a letter to Appellant's mother threatening an eminent domain action.

{¶8} Eventually, a "Recreational Trail Easement Agreement" (hereinafter, the "Agreement") was drafted. A Park District member, Dan Mathie, who is also a local real estate and business attorney, prepared this "Agreement." A copy of the draft was circulated to all of the Taylor family, including Appellant. After the "Agreement" was finalized, a meeting was held on June 1, 2009 wherein Mrs. Taylor signed the Agreement. Appellant and his siblings were present at this meeting. Mrs. Taylor received the sum of $91,300, which was the original appraisal plus 10%.

{¶9} The Agreement provided for a permanent perpetual exclusive easement across the property in favor of the Holmes County Park District for purposes of developing and operating the Holmes County Trail. The only right that Mrs. Taylor as the former landowner retained was the right to cross cattle at three separate locations. No other rights of any type were retained or reserved by Mrs. Taylor or her family, including but not limited to the right to remove and scrap the two 45 foot railroad bridges remaining on the property.

{¶10} Testimony elicited from the state's witness Larry Long indicated that Appellant sold the two bridges to Mr. Long for $2,000 in 2005 for scrap. Another of the state's witnesses, Shawn Feikert, corroborated this fact. Feikert testified that he was aware that Larry Long purchased the bridges years ago. Additionally, Jim Feikert, another witness for the state, testified that he too was aware that Larry Long had

purchased the bridges from Appellant "five or six years ago." Mr. Long did not remove the bridges immediately due to the low value of iron at that time.

{¶11} The state argued throughout the trial that Appellant had no legal interest in the bridges to convey to Larry Long or anyone else. Sometime in the spring of 2011, Appellant told Larry Long that he had better get his "iron (bridges) out" as the Trail is going to come through here. Appellant also advised Jim and Shawn Feikert, who actually removed the bridges, that he was the owner of the bridges and had the right to remove them. Jim Feikert specifically asked Appellant about the "Agreement" with the Park District and Appellant said he could remove the bridges.

{¶12} After the Feikerts removed the two bridges from the ground in late May 2011, Larry Long cut them up and took them to Lity's, a scrap yard in Coshocton County. There were five separate loads totaling 123,660 pounds. He was paid the total sum of $20,155 for the bridge scrap.

{¶13} Larry Long testified that he paid Appellant $2,000 for the two bridges in question back in 2005 or 2006; however, he also said he was to pay Appellant fifty percent of the scrap value once the bridges were removed. Larry Long cashed Lity's checks, put Appellant's 50% of the proceeds in an envelope along with the five scale tickets and gave it to Jim Feikert to give to Appellant. Larry Long gave the envelope to Jim Feikert approximately one month after the bridges were removed over Memorial Day weekend of 2011. Jim Feikert testified that he got the envelopes from Larry Long approximately several weeks after the work was completed and within the next month he gave the envelope with the cash and scale tickets to Appellant.

{¶14} A criminal investigation ensued where the Holmes County Sheriff's Office took statements from numerous individuals, including Appellant. Holmes County Sheriff Detective Geoff McVicker interviewed Appellant on August 15, 2011. Appellant's story was that he sold the bridges to Larry Long five or six years ago for $2,000.00 and that is all he got out of the deal. Appellant insisted they were no longer his bridges once he sold them to Larry Long. He did not get a "penny" from Larry Long or Jim Feikert when the bridges were removed and scrapped in 2011. Appellant did not tell Detective McVicker about the cash that he received from Larry Long for his fifty percent of the scrapping of the bridges. Appellant also claimed that he told the Park District members in a negotiation session "the bridges are gone... I did not say that the bridges were sold..."

{¶15} Appellant called his sister Joyce Yoder, the Holmes County Treasurer, as a witness in his defense. She testified that on September 29, 2011, she received two envelopes with $8,057 in cash and scale tickets from Appellant. He provided it to her to hold for safekeeping. He did not instruct her to return it to Larry Long. Treasurer Yoder testified she time-stamped the envelopes and put them in the Holmes County Treasurer's vault. She told the defendant's attorney the next day. She did not tell Detective McVicker. Joyce Yoder testified that Appellant told her the cash came from Larry Long for scrapping the bridges.

{¶16} Ron Mattox was the project manager for the Holmes County Rails to Trails project. He is a civil engineer with over 20 years of experience. He has worked on approximately a dozen similar Rails to Trails projects. Specifically, he designed the Trail across the property the District acquired from Mrs. Taylor including the use of Bridges 9

and 10. After the Appellant caused the two bridges to be removed and scrapped, Ron Mattox had to resurvey and redesign that portion of the project to replace those bridges. His replacement opinion was a cost of $75,000 for each bridge for a total of $150,000. His two reports and curriculum vitae were submitted into evidence as Trial Exhibits P, Q and Q1. Ron Mattox's engineering firm took numerous photographs of the two bridges involved (Nos. 9 and 10). These were identified and admitted at Trial as State's Exhibit C1-20.

{¶17} Prior to trial, on December 9, 2011, Appellant filed a Motion to Disqualify the Holmes County Prosecutor because the Prosecuting Attorney's office represented the Park District against Appellant's family. The matter was set for a hearing on January 31, 2012. Evidence was presented and the trial court took the matter under advisement. Later the same day, January 31, 2012, the trial court issued its order denying the motion to disqualify.

{¶18} On March 28, 2012, Appellant filed Defendant's Proposed Jury Instructions. Included in the instructions was a request for an instruction on "Mistake of Fact," as provided in Ohio Jury Instruction 417.05. On April 2, 2012, in response to the requested instruction, the State filed Proposed Jury Instruction on Mistake of Fact, asserting that "Mistake of Fact" was an affirmative defense, which would have the effect of shifting the burden of proof to Appellant. On April 3, 2012, Appellant filed an Objection to the State's proposed instruction. Later that day, the court held a hearing to address the conflict regarding the "Mistake of Fact" instruction. After hearing arguments of counsel, the trial court ruled that "Mistake of Fact" was an affirmative defense;

however, the trial court reserved its ruling on whether it would give the instruction on "Mistake of Fact" until after evidence was presented at the trial.

{¶19} On April 6, 2012, at the request of both the state and Appellant's Counsel, the trial court held another hearing to address the "Mistake of Fact" instruction and whether it was an affirmative defense. While both parties disagreed as to whether "Mistake of Fact" was an affirmative defense, the parties did agree that the trial court should make a definitive ruling on this legal issue prior to trial. The trial court heard additional arguments on this issue and took the matter under advisement. On April 19, 2012, the trial court issued its Judgment Entry. The trial court reversed its previous ruling, and found instead that that "Mistake of Fact" was not an affirmative defense. However, the trial court maintained its position that the decision whether to give the instruction would be made after the conclusion of evidence.

{¶20} On April 4, 2012, five days before the scheduled trial date, the state served Appellant with its Tenth Supplemental Response to Demand for Discovery, which provided the curriculum vitae of the state's expert witness. On April 5, 2012, Appellant filed Defendant's Motion in Limine to Preclude Expert Testimony, due to noncompliance with Crim. R. 16(K) for failing to disclose the information at least twenty-one (21) days before trial. The trial court set the matter for a hearing on April 6, 2012. At the hearing, the trial court took evidence and argument concerning the state's compliance with Crim.R. 16(K), and found there was "some substantial compliance with the rule", and therefore ruled that the state could present expert testimony; however, recognizing that the alleged expert report was "at best not really a report" the trial court

stated that it would grant a continuance if Appellant requested one. As a result, the trial was continued to July 16, 2012.

**{¶21}** On July 16, 2012, the matter proceeded to trial. Prior to taking evidence, Appellant restated his Motion to Disqualify the Holmes County Prosecutor and Motion to Exclude the Expert Testimony of Ronald Mattox. Additionally, immediately prior to the testimony of the state's expert witness, Appellant renewed his objection to the expert's report and his ability to give opinions on value.

**{¶22}** At the conclusion of the state's case, Appellant moved for an acquittal pursuant to Crim.R. 29 based on the failure of the state to provide evidence of the "fair market value" of the property in question. The motion for acquittal was overruled.

**{¶23}** The Appellant then called several witnesses before resting his case. Appellant renewed his motion for an acquittal pursuant to Crim.R. 29, based on the State's failure to provide evidence of the "fair market value" of the property. The motion for acquittal was again overruled.

**{¶24}** The trial court then provided final jury instructions to the parties. Upon review of the jury instructions, Appellant made an objection to the instructions, as they did not contain the "Mistake of Fact" instruction. Additionally, an objection was made regarding the trial court's instruction on the valuation of the property.

**{¶25}** The jurors returned a verdict of guilty. Sentencing was continued to allow a pre-sentence investigation. Sentencing was held on November 7, 2012. Appellant was sentenced to a 30-day jail sentence, one-year of house arrest, $77,125.00 in restitution, a $10,000.00 fine, 150 hours of community service, court costs, and five years of probation.

*Assignments of Error*

**{¶26}** Appellant raises six assignments of error,

**{¶27}** "I. THE TRIAL COURT ERRED IN FAILING TO GIVE THE JURY INSTRUCTION ON "MISTAKE OF FACT.

**{¶28}** "II. THE TRIAL COURT ERRED IN ALLOWING THE STATE'S EXPERT WITNESS, RONALD MATTOX, TO TESTIFY REGARDING VALUE AND ALLOWING HIS REPORT TO BE ADMITTED INTO EVIDENCE, WHEN HIS REPORT AND TESTIMONY WERE BASED ON INADMISSIBLE HEARSAY.

**{¶29}** "III. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL BASED ON THE FAILURE OF THE STATE TO PROVIDE EVIDENCE OF THE "FAIR MARKET VALUE" OF THE BRIDGES.

**{¶30}** "IV. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISQUALIFY THE HOLMES COUNTY PROSECUTOR BASED ON A CONFLICT OF INTEREST.

**{¶31}** "V. THE TRIAL COURT ERRED WHEN INSTRUCTING THE JURY, BY USING THE REPLACEMENT VALUE FOR THE BRIDGES RATHER THAN THE "FAIR MARKET VALUE" IMMEDIATELY BEFORE AND AFTER THE OFFENSE FOR THE DETERMINATION OF THE LEVEL OF THE OFFENSE.

**{¶32}** "VI. THE TRIAL COURT ERRED WHEN IT IMPOSED A CLEARLY EXCESSIVE SENTENCE UPON APPELLANT."

I.

{¶33} In his first assignment of error, Appellant contends that the trial court erred in failing to give the jury instruction on "mistake of fact."

{¶34} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist.1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140(1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

{¶35} "Error in refusing to give a special request to charge before argument must be prejudicial in order to support reversal of a judgment rendered against a party complaining of such error." *Smith v. Flesher*, 12 Ohio St.2d 107, 233 N.E.2d 137(1967), syllabus. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati*, 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135(1976). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832 (1991).

{¶36} Appellant acted as the spokesperson for the family throughout the negotiations with the Park District. Evidence was presented that he had informed the Park District that the bridges were "gone." In the case at bar, the Park District claimed

they bought the property and the two abandoned railway bridges; Appellant contended that he had sold the bridges in 2005, years before the Park District acquired its easement in 2009. Thus, according to Appellant's version of the facts, he owned the bridges and he sold the bridges in 2005. Under Appellant's argument, then, he was not acting under a "mistake of fact" concerning the ownership of the bridges. He argued that he had a right to sell the bridges and at the time they were removed, he no longer owned them.

{¶37} Appellant's concern he could not be found guilty if he was mistaken concerning the ownership of the bridges was adequately addressed by other jury instructions. The trial court did not abuse its discretion.

{¶38} Appellant's first assignment of error is overruled.

II.

{¶39} In his second assignment of error, Appellant contends that the trial court erred in allowing Ronald Mattox to testify regarding the replacement value of the two bridges and by allowing his report to be admitted into evidence, when his report and testimony were based on inadmissible hearsay.

{¶40} Ron Mattox is a civil engineer who is the Project Manager for the Park District's Rails to Trails project. He designed the Trail in Holmes County and specifically the Trail over the property acquired by the District from Mrs. Taylor, including Bridges 9 and 10. After the bridges were removed and scrapped by Appellant, Ron Mattox had to redesign that portion of the Trail to replace the two bridges. It was Ron Mattox's opinion that it would cost $75,000 a piece, or a total of $150,000 to replace the two bridges removed and scrapped by Appellant. He prepared two letter reports to the District,

which were identified and admitted as State's Trial Exhibits Q and Q1. Mattox's opinion as to value was based in part on pricing information acquired and utilized from subcontractors of his engineering firm, as well as information acquired from employees of his engineering firm. Immediately prior to the testimony of the expert witness, Appellant made the objection to the report and testimony, because the report and anticipated testimony were based on information simply provided to the expert by third parties.

{¶41} "Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). A decision to admit or exclude evidence will be upheld absent an abuse of discretion. *O'Brien v. Angle*, 63 Ohio St.2d 159, 164–165, 407 N.E.2d 490 (1980). Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Id.*" *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶20.

{¶42} In the case at bar, assuming *arguendo* that it was error to admit Ron Mattox's opinion, it was harmless error. It is undisputed that the actual scrap value for the two bridges in question was $20,155.00. The jury verdict forms indicate that the jury found the value of the property and the harm to the property was "$7,500.00 but less than $150,000.00," which is the threshold requirement for a Theft and Vandalism felony of the fourth degree.

{¶43} Accordingly, Appellant cannot demonstrate that Mattox's testimony affected Appellant's substantial rights or is inconsistent with substantial justice.

{¶44} Appellant's second assignment of error is overruled.

III. & V

{¶45} Appellant's third and fifth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶46} The Appellant was indicted for vandalism under R.C. 2909.05 and theft under R.C., 2913.02. Each offense requires the state to present evidence of the value in order to substantiate the level of the offense. In his third and fifth assignments of error, Appellant argues that the bridges were fixtures not personal property. Therefore, Appellant maintains the fair market value, not the cost to replace the bridges, must be proven.

{¶47} For vandalism, the parties agreed that R.C. 2909.11(B)(3) controlled the valuation:

(B)The following criteria shall be used in determining the value of property or amount of physical harm involved in a violation of division (A)(1) of section 2909.03 or section 2909.05 of the Revised Code:

* * *

(3) If the property is not covered under division (B)(1) of this section and the physical harm is such that the property cannot be restored substantially to its former condition, the value of the property, in the case of personal property, is the cost of replacing the property with new property of like kind and quality, and, in the case of real property or real property futures, is the difference in the fair market value of the property immediately before and immediately after the offense.

{¶48} For theft, R.C. 2913.61(D)(3) controlled the valuation:

(D) The following criteria shall be used in determining the value of property or services involved in a theft offense:

* * *

(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services.

{¶49} In the case at bar, the parties agree that the bridges were torn down, cut into 3 by 2 foot sections and sold as scrap metal. Thus, the iron bridges cannot be restored or reattached to the property.

{¶50} We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher*, 12 Ohio St. 2d 107, 233 N.E. 2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94 (1968); *Wachovia Mtg. Corp. v Aleshire*, 5th Dist. Licking No. 09 CA 4, 2009-Ohio-5097, ¶16. See, also, App.R. 12(D).

{¶51} An object may lose its status as a fixture if it is severed from the land. 50 Ohio Jurisprudence 3d, Fixture, Section 7 (2013). If the damage to the real estate is temporary and restoration is possible, the measure of damages for the unlawful removal of fixtures is the cost of replacing or repairing the removed fixtures. Id. at Section 24. *In Warrick Cty. v. Waste Mgt. of Evansville*, 732 N.E.2d 1255 (Ind.App.2000), the Indiana Appellate Court reviewed case law concerning how to appropriately calculate damages for the loss of a bridge or other public fixture,

The governmental entity charged with maintaining and or replacing the bridge suffers a loss when the bridge is damaged or the life of the bridge is shortened as a result of the negligent acts of another. *Com., Dept. of Transp. v. Estate of Crea*, 92 Pa.Commw. 242, 483 A.2d 996 at 1002 (Pa. Commw. Ct.1977). We are also aware that the award of damages should not create a windfall for the injured party. *Chaiken v. Eldon Emmor & Co., Inc.*, 597 N.E.2d 337, 347 (Ind.App.1992). Thus, when a bridge must be replaced as a result of the negligent acts of another, the governmental entity is injured to the extent of the value of the bridge, when considering such factors as the original cost, the age of the property, its use and utility from both an economic and social viewpoint, its condition, and the costs of restoration or replacement. *Vlotho v. Hardin Cty.*, 509 N.W.2d 350 at 357 (Iowa 1993); *Town of Fifield v. State Farm Mut. Auto. Ins. Co.*, 119 Wis.2d 220, 349 N.W.2d 684 at 691 (1984) , *Tuscaloosa Cty. v. Jim Thomas Forestry Consultants, Inc.*, 613 So.2d 322 (Ala.1992).

*Warrick Cty.*, supra, 732 N.E.2d 1255, 1260. In *Vlotho v. Hardin County*, cited by the Court in *Warrick County*, the Iowa Supreme Court noted,

Damages for the destruction of a public structure like a bridge cannot be determined by a reference to market value. That is because a destroyed bridge has no market value in the sense that a willing buyer or willing seller, even hypothetically, can be imagined. *Town of Fifield v. State Farm Mut. Auto Ins. Co.,* 119 Wis.2d 220, 225-27, 349 N.W.2d 684,

687 (1984). As one court put it, any attempt to apply a market value approach to property in the public domain like bridges "would be wholly speculative, the very pitfall to be avoided in proof of damages." *Com., Dept. of Transp.*, supra, 92 Pa.Commw. 242, 252,

*Vlotho*, supra, 509 N.W.2d 350 (Iowa 1993).

{¶52} In the case at bar, the Park District purchased the easement in order to complete the Holmes County Trail.  Testimony was adduced that the two bridges in question were to be used in the constructions of the final link in the trail. Testimony was also received that the bridges would have to be replaced in order to utilize the easement as the final link in the trail.

{¶53} We find no error in the trial court's use of the replacement value of the bridges as the correct measure of damages to determine the level of the offenses. The bridges were severed from the property and sold as scrap metal. The property was purchased with the intent to utilize the bridges. The trail cannot be completed without replacing the two bridges.

{¶54} In the alternative, the evidence was uncontroverted that the bridges were sold for scrap metal at a price of $20,155.00. This figure could have been utilized by the jury as the "fair market value" of the two bridges because that is what a willing buyer paid for them. This value exceeds the minimum $7,500 threshold to elevate the crimes to felonies of the fourth degree.

{¶55} Appellant has failed in his burden to demonstrate a prejudicial error affected his substantive rights.

{¶56} Appellant's third and fifth assignments of error are overruled.

IV.

**{¶57}** In his fourth assignment of error, Appellant contends the trial court erred in denying his motion to disqualify the prosecutor. Appellant asserts the prosecutor had a conflict of interest because he previously represented the Park District in an eminent domain action against Appellant's family concerning the property at issue in his criminal case.

**{¶58}** In *State v. Morris*, 5th Dist. Stark No. 2004CA00232, 2005-Ohio-4967, this Court observed,

When reviewing an allegation of a prosecutor's misconduct or disqualification, the reviewing court must review the matter on a case-by-case basis. See, *State v. White*, 2004–Ohio–5200; *State v. Waggaman* (Aug 20, 1997), Medina App. No. 96–CA–0078; *State v. Bryant* (June 26, 1997), Meigs App. No. 96–CA–14; *State v. Hiatt*, 120 Ohio App.3d 247, 697 N.E.2d 1025 (4th Dist.1997); *State v. Luna* (Sept. 2, 1994), Huron App. No. H–93–24; *State v. Perotti* (May 15, 1991), Scioto App. No. 89–CA–1845; *State v. Faulkner* (Aug. 20, 1990), Preble App. No. CA89–04–007; *State v. Jacobs* (Jan. 3, 1990), Summit App. No. 14089. The mere appearance of impropriety is insufficient to warrant the disqualification of an entire prosecutor's office.

A decree disqualifying a prosecutor's office should only be issued by a court when actual prejudice is demonstrated. In making the determination, relevant factors may include: 1) the type of relationship the disqualified prosecutor previously had with a defendant, 2) the screening

mechanism, if any, employed by the office, 3) the size of the prosecutor's office, and 4) the involvement the disqualified prosecutor had in the case. [*State v. White*, 8th Dist. No. 82066, 2004-Ohio-5200, ¶26] Prejudice will not be presumed by an appellate court where none is demonstrated. *State v. Freeman*, 20 Ohio St.3d 55, 485 N.E.2d 1043 (1985).

*Morris*, ¶16.

{¶59} Appellant argues the decision to charge him criminally, rather than allowing the civil channels to resolve the dispute evidence bias on the part of the prosecuting attorney because he is attempting to use his office to further the desires of his client, the Park Distinct.

{¶60} Mrs. Taylor owned the property. She agreed and signed the Recreational Trail Easement Agreement on June 1, 2009. Accordingly, no eminent domain proceedings were ever commenced. The bridges were removed sometime in late May 2011. Appellant was interviewed by the Holmes County Sheriff's office in relation to the removal of the bridges on August 15, 2011. The indictment charging Appellant was filed September 20, 2011. Appellant was accused of removing and destroying the two bridges. Thus, at the time of the charges the Park District had an agreement concerning the real property owned by Mrs. Taylor.

{¶61} In *State v. Flynt*, 63 Ohio St.2d 132, 134, 407 N.E.2d 15 (1980) , 451 U.S. 619, 101 S.Ct. 1958, 68 L.Ed.2d 489 (1981), the Ohio Supreme Court addressed the elements for establishing a selective-prosecution claim:

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1)

that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.,* based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.(Citation omitted.)

**{¶62}** In *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 532, 709 N.E.2d 1148 (1999), the Supreme Court broadened the second-prong of the test to include any selection deliberately based upon any arbitrary classification. Furthermore, the Ohio Supreme Court has held that "[a] mere showing that another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith." *Freeman*, supra, 20 Ohio St.3d 55, 58. Examples of when such an allegation may be held to be justified are those situations in which selection is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Trzebuckowski,* 85 Ohio St.3d at 530, *quoting Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 506, 7 L.Ed.2d 446, 453 (1962).

**{¶63}** As has been noted by both the Ohio and U.S. Supreme Courts, the burden in maintaining a selective prosecution claim is on the defendant as the prosecutor enjoys a presumption that his actions were non-discriminatory in nature. *State v. Keene*, 81 Ohio St.3d 646, 653, 693 N.E.2d 246 (1998). "In order to dispel [this] presumption * * *, a criminal defendant must present 'clear evidence to the contrary.'" *Id. quoting United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1480, 1486, 134

L.Ed.2d 687, 698 (1996). The U.S. Supreme Court further noted that in its cases delineating the elements of a selective prosecution case, it has taken "great pains" in explaining that the standard is a quite demanding one. *Armstrong,* 517 U.S. at 468. Such is the case as this type of claim requests a court to exercise judicial power over a special province of the executive branch of government. *Armstrong,* 517 U.S. at 468, *citing Heckler v. Chaney,* 470 U.S. 821, 832, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

{¶64} The trial court did conduct a hearing in this matter prior to overruling the motion to disqualify. The trial court found after hearing the testimony and arguments of counsel that the prosecutor was merely acting in his capacity as legal representative to the park district pursuant to R.C. 309.09(D) during the time that an eminent domain proceeding was contemplated. The Holmes County Sherriff's department investigated the criminal allegations, not the prosecuting attorney or his office. The fact that a public agency that is represented by the prosecuting attorney's office is also the victim of a crime is not enough to demonstrate a bias on the prosecutor's part. With the exception of Appellant's unsubstantiated allegations, we can glean nothing substantive from the record to suggest that the actions taken by the state were in any way motivated by prosecutorial vindictiveness, political pressure, or a desire to appease the Park District.

{¶65} Based on the evidence presented in the trial court, we conclude no prejudice was demonstrated as a result of the prosecutor's involvement in the potential eminent domain civil case, and consequently, the trial court did not abuse its discretion in denying Appellant's motion to disqualify.

{¶66} Appellant's fourth assignment of error is overruled.

VI.

{¶67} In his sixth assignment of error, Appellant argues that the trial court's decision to impose a 30-day jail sentence, one-year of home arrest, $77,125.00 in restitution, a $10,000.00 fine, 150 hours of community service, court costs, and five years of probation were clearly excessive and in no way were related to the purposes of felony sentencing.

{¶68} R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

{¶69} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph

three of the syllabus. The Eighth District recently stated in *State v. Venes,* 8th Dist. Cuyahoga No. 98682, 2013–Ohio–1891,

It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that "(t)he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.

It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

*Venes, supra,* at ¶ 20–21. *Accord, State v. Lee*, 12th Dist. Butler No. CA2012-09-182, 2013-Ohio-3404, ¶9; *State v. Money*, 12th Dist. Clermont No. CA2013-02-016, 2013-Ohio-4535, ¶8. We note that the *Venes* decision's standard of review is limited to the imposition of consecutive sentences. *Venes, supra,* at ¶10.

{¶70} In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Ohio Supreme Court reviewed its decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 as it relates to the remaining sentencing statutes and

appellate review of felony sentencing. See, *State v. Snyder*, 5th Dist. Licking No. 2008-CA-25, 2080-Ohio-6709, 2008 WL 5265826.

**{¶71}** In *Kalish*, the Court discussed the affect of the *Foster* decision on felony sentencing. The Court stated that, in *Foster*, the Ohio Supreme Court severed the judicial fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish,* ¶¶1 and 11, 896 N.E.2d 124, citing *Foster* at ¶100, See also, *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823.

**{¶72}** *"Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶13, see also *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1; *State v. Firouzmandi*, supra at ¶29.

> Thus, despite the fact that R.C. 2953.08(G)(2) refers to the excised judicial fact-finding portions of the sentencing scheme, an appellate court remains precluded from using an abuse-of-discretion standard of review when initially reviewing a defendant's sentence. Instead, the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal question, this is

subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G).

*Kalish* at ¶14.

**{¶73}** Therefore, *Kalish* holds that, in reviewing felony sentences and applying *Foster* to the remaining sentencing statutes, the appellate courts must use a two-step approach. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment shall be reviewed under an abuse of discretion standard." *Kalish* at ¶4, *Foster*, supra, 109 Ohio St.3d 1.

**{¶74}** In the case at bar, we are unable to review the trial court's November 7, 2012 sentencing and restitution hearings because the transcript of those hearings was not filed with the trial court or made a part of the record for purposes of appeal. Therefore, it does not constitute part of the record on appeal. See App.R. 9(A).

**{¶75}** Appellant has the responsibility of providing the reviewing court with a record of the facts, testimony, and evidentiary matters that are necessary to support the appellant's assignments of error. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 409, 629 N.E.2d 500, 506(9th Dist 1993); Volodkevich *v. Volodkevich*, 48 Ohio App.3d 313, 314, 549 N.E.2d 1237, 1238-1239 (9th Dist 1989). This principle is recognized in App.R. 9(B), which provides, in part, that '***the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.***. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing

court has nothing to pass upon and thus, as to the assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385(1980). If a partial record does not conclusively support the trial court's decision, it is presumed that the omitted portion provides the necessary support. *Wozniak*, 90 Ohio App.3d at 409, 629 N.E.2d at 506; In *re Adoption of Foster*, 22 Ohio App.3d 129, 131, 489 N.E.2d 1070, 1072-1073(3rd Dist 1985), *overruled on other grounds In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 585 N.E.2d 418 (1992). Also, in *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528(2001), the Supreme Court noted: "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978). It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty,* 4th Dist. Pickaway No. 411, 1980 WL 350992 (Feb. 28, 1980), *citing Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227(10th Dist 1963).

{¶76} In the case at bar, the record does not contain a transcript of the sentencing and restitution hearings conducted by the trial court on September 7, 2012. Without a complete record of the hearings in the trial court, we presume that the omitted hearings support the trial court's decision and that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and

recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code and advised Appellant regarding post release control. Therefore, the sentence is not clearly and convincingly contrary to law. In the case at bar, the trial court's November 7, 2012 journal entry states it has considered the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the factors set forth in R.C. 2929.12.

{¶77} We find the trial court properly considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the applicable factors set forth in R.C. 2929.12, along with all other relevant factors and circumstances. While Appellant may disagree with the weight given to these factors by the trial judge, Appellant's sentence was within the applicable statutory range for a felony of the fourth degree and therefore, we have no basis for concluding that it is contrary to law. Similarly, the trial court's sentence cannot be said to be an abuse of discretion given the circumstances here. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140(1983). (an abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable."). We further hold Appellant's sentence in this matter was not based on the consideration of improper factors and was not unreasonable, arbitrary or unconscionable.

{¶78} Appellant's sixth assignment of error is overruled.

{¶79} The judgment of the Holmes County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Farmer, J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. JOHN W. WISE


WSG:clw 1212

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| KENNETH E. TAYLOR | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 12CA18 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Holmes County Court of Common Pleas is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE